1  WILLIAM F. ALDERMAN (STATE BAR NO. 47381)
   walderman@orrick.com
2  JUSTIN M. ARAGON (STATE BAR NO. 241592)
   jaragon@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA 94105-2669
5  Telephone:   415-773-5700
   Facsimile:   415-773-5759
6
   Attorneys for Defendants
7  NOVASTAR MORTGAGE, INC., NOVASTAR HOME
   MORTGAGE, INC., and NOVASTAR FINANCIAL, INC.
8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12

13  CHRISTOPHE KUBIAK, an individual; and           Case No. C07-3438 VRW
    SEBASTIAN SANGES, an individual, on
14  behalf of themselves and all others similarly   **DEFENDANTS' MOTION TO
    situated,                                       DISMISS; NOTICE OF MOTION;
15                                                  DEFENDANTS' OPENING BRIEF**
                   Plaintiffs,
16                                                  Hearing Date:  October 25, 2007
            v.                                      Time:          2:30 p.m.
17                                                  Courtroom:     6
    NOVASTAR MORTGAGE, INC., a Virginia             Hon. Vaughn R. Walker
18  Corporation; NOVASTAR HOME
    MORTGAGE, INC., a Delaware Corporation;
19  and NOVASTAR FINANCIAL, INC., a
    Maryland Corporation,
20
                   Defendants.
21

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1
II. STATEMENT OF FACTS .....................................................................................................1
III. ARGUMENT ..........................................................................................................................4
    A. Plaintiffs Fail to State a Claim Cognizable Under the Twombly Standard ............4
        1. Plaintiffs Do Not and Never Will Level a Sufficient Allegation Regarding the Payment of a YSP .................................................................4
        2. Plaintiffs Do Not and Never Will Level a Sufficient Allegation of Harm ...........................................................................................................6
    B. NFI and NMI Have No Place in This Suit ..............................................................8
        1. NFI Has no Indirect Liability ...................................................................8
        2. NMI Had Neither a Reason Nor a Duty to Disclose .................................9
    C. Plaintiffs' State Law Claims Fail ...........................................................................10
        1. Plaintiffs Cannot State a UCL Claim .......................................................10
            a. Defendants Have Done Nothing "Unlawful" ...............................10
            b. Defendants Have Done Nothing "Unfair" ....................................11
            c. Defendants Have Done Nothing "Fraudulent" .............................13
        2. Plaintiffs Have Failed to State FAL and CLRA Claims..........................13
        3. Plaintiffs Seek Improper Remedies .........................................................14
IV. CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bell Atlantic Corp.* v. *Twombly*,
    127 S. Ct. 1955 (2007) .................................................................................. 5, 6, 7

*Brown* v. *Allstate Ins. Co.*,
    17 F. Supp. 2d 1134 (C.D. Cal. 1998) ................................................................ 14, 15

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................................. 5

*Freeman* v. *Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................... 13

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ................................................................................... 6

*Jefferson* v. *Chase Home Finance LLC*,
    2007 WL 1302984, 2007 U.S. Dist. LEXIS 36298 (N.D. Cal. May 3, 2007) ....... 14

*Steckman* v. *Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................................. 6

*United States* v. *Ritchie*,
    342 F.3d 903 (9th Cir. 2005) ................................................................................... 6

*Van Slyke* v. *Capital One Bank*,
    2007 WL 1655641, 2007 U.S. Dist. LEXIS 44072 ( N.D. Cal. June 07, 2007) .... 14

## STATE CASES

*Berry* v. *American Express Publishing, Inc.*,
    147 Cal. App. 4th 224 (4th Dist. 2007) ................................................................. 14

*Berryman* v. *Merit Property Management, Inc.*,
    152 Cal. App. 4th 1544 (4th Dist. 2007) ......................................................... 10, 13

*Byars* v. *SCME Mortgage Bankers, Inc.*,
    109 Cal. App. 4th 1134 (4th Dist. 2003) ............................................................ 5, 12

*Fairbanks* v. *Superior Court*,
    154 Cal. App. 4th 435 (2nd Dist. 2007) ................................................................ 14

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2001) ......................................................................................... 14

*McKell* v. *Washington Mutual, Inc.*,
    142 Cal. App. 4th 1457 (2nd Dist. 2006) .............................................................. 14

*Park* v. *Cytodyne Technologies, Inc.*,
    2003 WL 21283814 (Cal. Sup. May 30, 2003) ..................................................... 13

# TABLE OF AUTHORITIES
## (continued)

Page

## FEDERAL STATUTES AND REGULATIONS

15 U.S.C. § 1635(a) .................................................................................................................. 12

12 U.S.C. § 2604(c) ............................................................................................................ 2, 7, 8

12 C.F.R. § 226.23(a)(3) ......................................................................................................... 12

24 C.F.R. § 3500.7(a) ........................................................................................................ 2, 8, 9

24 C.F.R. § 3500.8(b) ............................................................................................................ 8, 9

24 C.F.R. § 3500, App ........................................................................................................... 2, 3

Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53052,
    530354 ............................................................................................................................... 5

## STATE STATUTES

Cal. Bus. & Prof. Code
    § 17200 ............................................................................................................................. 10
    § 17204 ............................................................................................................................... 7
    § 17500 ............................................................................................................................. 13

Cal. Civ. Code
    § 1770(a) ........................................................................................................................... 13
    § 1780(a) ............................................................................................................................. 7

Cal. Fin. Code
    § 50204(c) ................................................................................................................... 10, 11
    § 50204(j) .......................................................................................................................... 11
    § 50503 ......................................................................................................................... 8, 11
    § 50503(a)(2) ...................................................................................................................... 8
    § 50505 ............................................................................................................................. 11

## NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2007, at 2:30 p.m. or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Vaughn R. Walker, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, defendants NovaStar Mortgage, Inc., NovaStar Home Mortgage, Inc. and NovaStar Financial, Inc. will and hereby do move to dismiss this action for failure to state a claim upon which relief can be granted.  The motion is made under Rule 12(b)(6) of the Federal Rules of Civil Procedure and is based on the accompanying opening brief and request for judicial notice, and on all the pleadings and papers on file herein.

## RELIEF SOUGHT

Defendants respectfully request that the action be dismissed with prejudice, inasmuch as the loan documents provided to plaintiffs indisputably belie their putative claim.

## DEFENDANTS' OPENING BRIEF

### I.    INTRODUCTION

This case is grounded on a speculative hypothesis that is belied by documents given to plaintiffs themselves.  Those documents, of which the Court may properly take judicial notice, compel dismissal.

Plaintiffs Christophe Kubiak and Sebastien Sanges refinanced their home through a loan from one of the defendants.  They complain that defendants failed to disclose to them a fee, known as a "yield-spread premium" or "YSP," allegedly paid by the lender to the broker through whom plaintiffs obtained the refinancing.  But the actual loan documents make clear that the purported broker was in fact the lender and that no YSP was in fact paid.  The documents also establish that, even though no YSP was ultimately paid, the possibility of a YSP was in fact disclosed to plaintiffs in accordance with federal law.

Because the speculative foundation of plaintiffs' claim is indisputably false, defendants' motion to dismiss should be granted and the action dismissed with prejudice.

### II.    STATEMENT OF FACTS

Defendants NovaStar Mortgage, Inc. ("NMI") and NovaStar Home Mortgage, Inc.

("NHMI") are subsidiaries of defendant NovaStar Financial, Inc. ("NFI"). Compl. ¶¶ 7, 9. NMI makes home loans. *Id*. ¶ 7. At all times relevant to the complaint, NHMI brokered home loans, *i.e.*, assisted home buyers in obtaining loans from mortgage lenders, including NMI. *Id*. ¶ 3. NHMI was also licensed in California to make home loans and often, as it did here, acted as a lender rather than broker. *Id*. ¶¶ 9, 15. Plaintiffs do not allege, nor could they, that the corporate parent NFI is either a lender or a broker.

Mortgage brokers naturally receive compensation for the assistance they provide. *Id*. ¶¶ 1, 2. Part of this compensation may come in the form of an origination fee, which the borrower may either pay up-front or amortize, *i.e.*, add to the loan principal. *Id*. ¶ 1, 19, 24. Another portion of the broker's compensation may come in the form of a yield-spread premium ("YSP"), which is paid by the lender to the broker. *Id*. ¶ 2.[1] Unlike an origination fee, a YSP does not act to increase the loan principal and is instead reflected in the loan's interest rate. *Id*. A lender disseminates a rate sheet to brokers setting out interest rates for varying YSP levels. *Id*. ¶ 11. A loan involving no YSP will carry one interest rate; one involving a YSP of 1% of the loan amount will carry a higher rate; one involving a YSP of 2%, a still higher rate. *Id*.

Federal law requires YSP-related disclosures at two points in the lending process, near the beginning and at the very end. First, a borrower must receive a Good Faith Estimate ("GFE") form within three days of filing a loan application. *See* 24 C.F.R. § 3500.7(a), (b) (a lender or broker must provide GFE within three days after a borrower's loan application is received). The GFE, as its name suggests, provides the borrower with a reasoned approximation of the settlement charges he or she should expect to incur in connection with the loan, as well as any potential YSP. *See* 12 U.S.C. § 2604(c) ("Each lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement . . . ."); 24 C.F.R. § 3500, App. B – Illustrations of Requirements Of RESPA (any fee or payment to broker must be noted on GFE). Second, the settlement agent provides the borrower with a HUD-1 settlement statement at the end of the

---

[1] Since plaintiffs use the terms "yield-spread premium," "YSP" and "premium" interchangeably (Compl. ¶ 2), we will do so as well.

lending process—*i.e.*, at closing—which sets out the actual settlement charges, including any YSP, that the borrower is actually incurring. *Id.* (any fee or payment to broker must be noted on HUD-1 statement); *Id.* § 3500.8(b) (the "settlement agent shall complete the HUD-1 or HUD-1A . . .").

Plaintiffs Christophe Kubiak and Sebastien Sanges contacted NHMI on April 19, 2005 to discuss the possibility of refinancing three mortgage loans on their home. Request for Judicial Notice in Support of Defendants' Motion to Dismiss ("RJN") Exs. A-D.[2] NHMI reviewed an array of possible loan scenarios with plaintiffs, preparing for them a total of four draft Uniform Residential Loan Applications. *Id*. The applications, each involving an adjustable-rate mortgage, envisioned interest rates ranging from 7.875% to 8.5% depending on the settlement charges plaintiffs were willing to pay and the amount of cash they would receive at closing. *Id*. Plaintiffs ultimately signed the application that provided them with the lowest settlement charges and the most cash in hand, which carried an interest rate of 8.2%. Ex. A.

NHMI also prepared and provided plaintiffs with two GFEs estimating the settlement charges they could expect to incur in connection with their loan. Exs. E-F. The GFEs were prepared on April 19th – the same day plaintiffs contacted NHMI – and listed projected interest rates of 7.99% and 8.5%, again depending on settlement charges and cash in hand. *Id*. The 7.99% GFE estimated charges of $13,506.82 ($3,228.19 more than actually paid) and cash in hand of $20,598.18 ($3,488.16 less than actually received) Ex. E. The 8.5% GFE estimated $12,621.48 in charges ($2,333.85 more than actually paid) and $21,012.52 in cash ($3,073.82 less than actually received). Ex. F.

Documents in the loan file establish beyond question that NHMI intended from the outset to serve as the lender and ultimately did serve as the lender rather than a broker on the plaintiffs' loan. This is reflected both in documents generated on the day plaintiffs contacted NHMI (*e.g.*,

---

[2] All references to "Ex. __" are to exhibits to the RJN, which come from the documents provided to plaintiffs by NHMI in connection with their loan.

[4] Plaintiffs allege that they received a GFE on April 15, 2005. Compl. ¶ 19. As the documents demonstrate, however, plaintiffs actually received the GFEs a few days later. In any event, plaintiffs acknowledge that they received a GFE, which disclosed a potential YSP, more than a month before the loan closing date.

the Truth-In-Lending Disclosure Statements and the Servicing Disclosure Statement of April 19, 2005, which identify NHMI as lender) and in documents signed by plaintiffs at the closing on May 20, 2005(*e.g.*, the promissory note and deed of trust dated May 20, 2005, which likewise identify NHMI as lender). Exs. G-I, L-M. It is reflected as well in the HUD-1 statement prepared by the settlement agent (Nations Title Agency) at closing. Ex. K. That statement identifies NHMI as the lender and makes no mention of a YSP. *Id*. This only makes sense since NHMI, acting as a lender rather than a broker, could receive no YSP.

While NHMI intended all along to act as lender, it did recognize the possibility that it could ultimately serve as a broker. Out of an abundance of caution, it informed plaintiffs in the two GFEs of April 19, 2005 that their loan could carry a YSP of between 0 and 3%. Exs. E-F. As a consequence, plaintiffs were on notice from the outset that their loan might involve compensation to NHMI of up to 3% of the loan principal and that this compensation was incorporated within the estimated 7.99% and 8.5% rates.[4]

The ultimate terms of the loan, as detailed in the HUD-1, were significantly more favorable to plaintiffs than those estimated in the earlier disclosures to them. Plaintiffs received over $24,000 in cash at closing, which was anywhere from $1,004.40 to $3,488.16 more than had been discussed or disclosed to them in the loan applications and GFEs. Exs. A-D, C-F, K. And they would pay settlement charges of only $10,278.63, an amount $1,004.43 to $3,228.19 less than disclosed in the applications and GFEs.[5] *Id*.

### III. ARGUMENT

**A. Plaintiffs Fail to State a Claim Cognizable Under the *Twombly* Standard**

    **1. Plaintiffs Do Not and Never Will Level a Sufficient Allegation Regarding the Payment of a YSP**

Federal Rule of Civil Procedure 12(b)(6), which permits a district court to dismiss any complaint that "fail[s] to state a claim upon which relief can be granted," fosters judicial economy and spares litigants unnecessary burden by disposing of legally infirm actions at the pleading

---

[5] The HUD-1 lists settlement charges of $24,699.64. However, this includes $14,421.01 to pay off an obligation to an earlier lender (Green Tree Servicing, LLC).

stage. *See also*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (a complaint's inability to state a cognizable claim "should be exposed at the point of minimum expenditure of time and money by the parties and the court") (citations and internal marks omitted).

It was once the case that a court would not dismiss an action under the rule unless the contents of a complaint made clear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). But the Supreme Court recently abandoned that standard, insisting that a complaint hoping to survive a 12(b)(6) motion must do more than leave "open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." *Id.* at 1968 (brackets in original; other marks and citation omitted). A complaint must instead recite allegations sufficient "to raise a right to relief above the speculative level" and "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Id.* at 1965 (citations omitted). In short, a complaint must, at the very least, make a "showing of a reasonably founded hope that a plaintiff would be able to make a case." *Id.* at 1969. Plaintiffs here fail to make that showing.

Plaintiffs' complaint is about YSPs. But they do not contend, nor could they, that YSPs are illegal, unfair or anything but a commonly-accepted and HUD-approved tool for compensating brokers. See Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53054 (YSPs allow borrowers to avoid substantial upfront loan costs and, in turn, foster home ownership); *see also Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1148 (4th Dist. 2003) (generally discussing propriety of YSPs). Instead, they allude to non-disclosure of a YSP, professing a belief that NMI failed to disclose a YSP that it paid to NHMI and that this failure deprived plaintiffs of the opportunity to shop for a better interest rate:

> ***On information and belief***, NMI paid NHMI a premium on plaintiffs' loan that caused the interest rate on Plaintiffs' loan to be increased from what otherwise would be available to them.

Compl. ¶ 26 (emphasis supplied).

This "allegation"—which forms the very heart of plaintiffs' claim—does not meet the *Twombly* standard. Compl. ¶¶ 2, 4, 26. It does not "raise a right to relief above the speculative

level" or do more than create "a suspicion of a legally cognizable right of action." *Twombly*, 127 S. Ct. at 1965. Indeed, it does precisely what *Twombly* discredits: levels an allegation in the faint hope of substantiation through later discovery. In sum, plaintiffs' inability actually to allege the very premium on which their case turns, and to hint at such a premium only on "information and belief," renders their complaint untenable under the *Twombly* standard. *See id.* at 1962, 1970 (holding, in antitrust case, that allegation on information and belief that defendants had entered into an illicit agreement did not state a claim upon which relief could be granted).

Plaintiffs' inability actually to allege a YSP is easily explained by the fact that NHMI in reality received no YSP, something made abundantly clear by the loan documents provided to plaintiffs. Those documents—including the promissory note, the deed of trust, the HUD-1 statement and myriad others—demonstrate beyond question that NHMI acted as a lender and not as a broker with respect to plaintiffs' loan and, in turn, that no YSP was or could have been paid. Exs. L-K. Because the loan documents form the entire basis of the plaintiffs' complaint—that is, because the plaintiffs' sole allegation is that those documents failed to make proper disclosures— the "defendant[s] may offer [those] document[s], and the district court may treat [those] document[s] as part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *United States v. Ritchie*, 342 F. 3rd 903, 908 (9th Cir. 2005); *see also Steckman v. Hart Brewing, Inc.*, 143 F. 3rd 1293, 1295-96 (9th Cir. 1998) (the Court "need not accept as true conclusory allegations which are contradicted by documents referred to in the complaint").[6]

**2.  Plaintiffs Do Not and Never Will Level a Sufficient Allegation of Harm**

Plaintiffs attempt to assert claims under (1) sections 17200 *et seq.* of the California Business & Professions Code, known as the "Unfair Competition Law" or "UCL"; (2) sections 17500 *et seq.* of that same Code, known as the "False Advertising Law" or "FAL"; and (3) sections 1750 *et seq.* of the Civil Code, which make up the Consumers Legal Remedies Act or "CLRA." Compl. ¶¶ 39-53; 54-67; 68-70. A plaintiff—including a representative plaintiff in a

---

[6] This point is discussed in more detail in the accompanying Request for Judicial Notice.

class action—must allege and ultimately demonstrate harm to recover under each of these statutory causes of action. See Cal. Bus. & Prof. § 17204 (plaintiff has standing to sue only where she or he "has suffered injury in fact and has lost money or property as a result of . . . unfair competition"); *id.* at § 17535 (plaintiff has standing to sue only where he or she has "suffered injury in fact and has lost money or property as a result of a violation of this chapter"); Cal. Civ. Code § 1780(a) (allowing suit by "[a]ny consumer who suffers any damage as a result of" proscribed practices).

Plaintiffs' allegation of harm here is that they would have been in a position to shop around for a lower interest rate had they known of a YSP. Compl. ¶¶ 4, 26. As an initial matter, their claims in this regard are vague and sheerest speculation. They do not suggest (much less allege), for example, that a lower rate was actually available to them. Their allegation of harm fails to make the "showing of a reasonably founded hope that [they] would be able to make a case" under either the UCL, the FAL or the CLRA. *Twombly*, 127 S. Ct. at 1969.

Second, plaintiffs' loan involved no YSP. They can hardly claim to have been harmed by the non-disclosure of a payment that was never made.

Finally, and perhaps most important, plaintiffs could not allege harm *even had a YSP been paid*. As noted, while NHMI contemplated acting as lender from the very outset, it addressed the possibility that it might ultimately serve as broker by including on the two April 19 GFEs an estimated YSP of 0 to 3% of the loan amount. Exs. E-F.[7] Plaintiffs therefore knew that both of the interest rates on offer—rates of 7.99% and 8.5% depending on, among other things, the cash they would receive at closing—incorporated and reflected a YSP of as much as 3%. Armed with this disclosure, they had ample time—more than a month—to "shop" their loan if they sought to find one that did not involve a premium and that, in turn, carried a lower interest rate. Whether plaintiffs did, in fact, investigate other options is not alleged. In any case, the fact that they negotiated four different loan scenarios with NHMI demonstrates that they certainly knew how to

---

[7] Because the GFE is, as its name suggests, merely an estimate, the law provides that the document may set out a range for each anticipated settlement charge. *See* 12 U.S.C. § 2604(c) ("Each lender shall include with the booklet a good faith estimate of the amount or *range of charges for specific settlement services* the borrower is likely to incur in connection with the settlement as prescribed by the Secretary.") (emphasis supplied).

protect their interests.

Moreover, because no YSP was paid to NHMI in the end, plaintiffs under their theory had more impetus to look for alternative financing than actually existed. They spent a month knowing that their loan could involve a YSP of up to 3%. If credence is given to their claim that YSP disclosure provides an opportunity to shop for better interest rates, plaintiffs in fact had every opportunity to do so even though their NHMI loan ultimately involved no YSP at all.

**B.   NFI and NMI Have No Place in This Suit**

   **1.   NFI Has no Indirect Liability.**

Even if plaintiffs' loan had involved a YSP and even if the YSP had not been disclosed, NFI and NMI would still have no proper place in this action. With respect to NFI, plaintiffs do not begin to suggest that NFI had a duty to disclose some fact or, indeed, that it had any involvement whatever in the loan at issue. They instead urge, in a single paragraph of their complaint, that NFI is liable for the alleged improprieties of NMI and NHMI under section 50503 of the California Residential Mortgage Lending Act ("CRMLA"). This, to put it mildly, misunderstands the statute. Section 50503 reads, in relevant part:

> (a) It is a violation for any person subject to this law or any director, partner, shareholder controlling an ownership interest of 10 percent or more, trustee, officer, agent, or employee of any such person to do any of the following:
>
> . . . .
>
> (2) Knowingly or recklessly make or cause to be made any misstatement or omission of a material fact, pertaining to a loan or loan servicing.

Cal. Fin. Code § 50503(a)(2).

This provision does not, as plaintiffs appear to suggest, render a 10% shareholder liable for misstatements or omissions regarding a loan or loan servicing made by a person subject to the CRMLA. It instead provides in unmistakably clear language that such a shareholder will violate the act only where that shareholder itself "knowingly or recklessly make[s] or cause[s] to be made

any [such] misstatement or omission . . . ." *Id.*

Plaintiffs are unable to allege that NFI knowingly or recklessly made any misrepresentation or caused a misrepresentation to be made. NFI therefore has no place in this action and should be dismissed.

### 2.     NMI Had Neither a Reason Nor a Duty to Disclose.

NMI's inclusion in this action is just as improper. NMI had no duty to disclose any premium, even assuming one had existed. Regardless of whether NHMI acted as broker (as initially contemplated) or as lender (as ultimately occurred), NMI had no disclosure duty.

Federal law requires that a GFE list any contemplated YSP and that the HUD-1 statement list any actual YSP. But it was not up to NMI to provide either of these disclosures. Had NMI been the lender and NHMI a broker, NMI would have had no duty to provide a GFE when NHMI as broker had already done so:

> In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs (a suggested format is set forth in Appendix C of this part). *As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate.*

24 C.F.R. 3500.7(b) (emphasis supplied). Plaintiffs cannot allege that NHMI was an "exclusive agent" of NMI – *i.e.*, that it placed loans only with NMI. As a result, NHMI's providing GFEs relieved NMI of any obligation in that regard. Where, as here, NHMI was the lender, it still fell to NHMI and not NMI to provide the GFEs. As a lender with no broker between itself and plaintiffs, NHMI had the sole duty to provide the GFEs. 24 C.F.R. 3500.7(a). Inasmuch as NMI had no duty to provide a GFE to plaintiffs, it did not breach any law or dictate of fairness by failing to do so.

Moreover, the law provides that the HUD-1 statement is to be completed, not by the lender or even by the broker, but rather by the settlement agent—in this case, Nations Title Agency. *See* 24 C.F.R. 3500.8(b) ("The settlement agent shall complete the HUD-1 or HUD-1A in accordance with the instructions set forth in appendix A to this part."). Even aside from the

fact that the HUD-1 provided plaintiffs with every shred of disclosure required by the law, NMI had no duty to provide that disclosure and cannot be liable for the HUD-1's contents.[10]

### C. Plaintiffs' State Law Claims Fail

Plaintiffs' inability to allege the actual payment of a YSP and the fact that the GFEs disclosed a potential YSP one month prior to the closing date eviscerate their bid for recovery. The absence of any claim becomes still more obvious upon examination of the statutes on which plaintiffs base their case.

#### 1. Plaintiffs Cannot State a UCL Claim

The UCL prohibits and makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. With respect to its "unlawful" prong, "the UCL borrows violations of other laws and makes those unlawful practices actionable." *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1553 (4th Dist. 2007). Conduct is actionable as "unfair" if the consumer injury occasioned by that conduct "is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Id.* at 1555. Conduct can be "fraudulent" both when it has deceived and when it is shown as likely to deceive. *See id.* However, the "failure to disclose a fact one has no affirmative duty to disclose" does not constitute fraudulent conduct. *Id.* at 1557. As we show below, plaintiffs cannot state a claim under any of the UCL's three prongs.

##### a. Defendants Have Done Nothing "Unlawful"

Because defendants complied with every federal statute and regulation governing the transaction at issue, federal law cannot serve as the basis of any alleged "unlawful" conduct. Perhaps in recognition of that fact, plaintiffs seek to allege violations of a smattering of state statutes in conclusory fashion. These statutes likewise provide no basis for plaintiffs' complaint.

First, certain of the state statutes identified by plaintiffs merely echo federal provisions that defendants, as discussed, have not violated. Section 50204(c) of the CRMLA, for example,

---

[10] It follows as well that NHMI likewise has no responsibility for the contents of the HUD-1.

prohibits a licensee from "[a]ccept[ing] fees at closing that are not disclosed to the borrower on the federal HUD-1 Settlement Statement." Cal. Fin. Code § 50204(c). Section 50505 states simply that a violation of RESPA is likewise a violation of the CRMLA. See Cal. Fin. Code § 50505 ("Any person who violates any provision of the federal Real Estate Settlement Procedures Act… violates this division."). These provisions, entirely derivative of federal law, are of no use to plaintiffs here.

The remaining state statutes mentioned by plaintiffs are essentially identical in import to section 17200 itself, and so serve only to beg the question of any wrongdoing. Sections 50204(j) and (k) of the CMLRA prohibit, respectively, "knowingly misrepresent[ing], circumvent[ing], or conceal[ing] . . . any material aspect or information regarding a transaction" and any "act that constitutes fraud or dishonest dealings." Cal. Fin. Code § 50204(j), (k). Section 50503 similarly proscribes "knowingly or recklessly mak[ing] or caus[ing] to be made any misstatement or omission of a material fact pertaining to a loan or loan servicing." Id. § 50503(a)(2). Section 50701 imposes a duty on licensees to fully disclose all material facts to borrowers. Id. § 50701(c). In short, these provisions prohibit what is already prohibited by the UCL and add nothing to the mix. Put another way, had defendants engaged in fraud or knowingly misrepresented material facts, they could face exposure under the UCL regardless of whether that conduct was likewise prohibited by some other statute.

### b.     Defendants Have Done Nothing "Unfair"

As noted, conduct qualifies as "unfair" under the UCL if it occasions a substantial injury that a plaintiff could not reasonably have avoided and that is not outweighed by countervailing benefits to consumers or to competition. Plaintiffs can make no case under this prong because they were not injured.

The length and breadth of plaintiffs' allegations of injury is that defendants' failure to disclose YSPs robs borrowers of the information they need to seek out better loans. They write:

> NMI's failure to adequately disclose to California borrowers its premium payment until the borrower sings final loan documents (hereinafter "closing"), if at all, takes the borrower off the market and deprives him of the opportunity to secure a lower interest rate loan.

Compl. ¶ 4. Yet plaintiffs' loan involved no YSP. As a result, and as discussed earlier, plaintiffs actually had more impetus to shop their loan than actually existed. The GFEs put them on notice of a potential premium of up to 3% of the loan amount a full month before the loan closing. Exs. E-F. They had thirty days to seek out better loan packages, to consider their options, to forgo refinancing altogether. *Cf., Byars v. SCME Mortgage Bankers, Inc., supra*, 109 Cal. App. 4th at 1148 (finding no violation of section 17200 where YSP was disclosed on HUD-1 statement at closing). They were deprived of nothing.

Moreover, the disclosure or non-disclosure of a YSP could not even in theory affect a borrower's decision to seek alternative financing. As discussed, a YSP is incorporated into the interest rate. If a borrower has an offer at an interest rate that includes no YSP, and another offer at a lower interest rate that includes a YSP, the borrower will obviously choose the latter option. A borrower shops for the loan that minimizes his own overall cost, not for the loan that involves the least compensation to the broker.

Here, plaintiffs had more than a month to minimize their cost. They had from April 19 to May 20, 2005 to seek out other lenders, to confer with brokers, and to reassess whether refinancing even made sense. Indeed, they actually had more time than that. As plaintiffs well knew, their loan agreement, in accordance with federal law,[11] allowed them to rescind the loan transaction entirely within three days of closing. Ex. O. In the end, then, plaintiffs had some five weeks—spanning the period both before and after closing—to consider and to reconsider their options.

Finally, plaintiffs cannot reasonably allege unfair conduct when they ultimately got a better deal from NHMI than was disclosed in either of the GFEs. The 7.99% GFE estimated settlement fees at some $13,500 and cash at closing at around $20,600. Ex. E. The 8.5% GFE estimated some $12,600 in settlement fees and $21,000 in cash. Ex. F. But when plaintiffs ultimately secured their loan at 8.2%, they received substantially more cash – around $24,000 – and paid substantially lower fees – around $10,300 – than had been predicted by either of the

---

[11] The federal Truth-in-Lending Act allows borrowers refinancing a home loan with a lender other than the original lender to rescind a loan transaction within three-days of closing. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3).

GFEs. Ex. K.

### c. Defendants Have Done Nothing "Fraudulent"

As noted, a failure to divulge information does not constitute fraudulent conduct under the UCL absent an affirmative duty to disclose that information. *See Berryman*, 152 Cal. App. 4th at 1557. NFI and NMI were, as demonstrated above, under no duty to disclose anything to the borrowers and cannot, therefore, have engaged in fraud. As for NHMI, it disclosed every fact and shred of information required by the statutes and regulations – including the possibility of a YSP that was ultimately never paid – and cannot have engaged in any fraud cognizable by the UCL.

### 2. Plaintiffs Have Failed to State FAL and CLRA Claims

Section 17500 of the Business and Professions Code, sometimes referred to as the False Advertising Law ("FAL"), generally prohibits persons from making misleading statements about goods or services they plan to sell. Section 1770(a) of the Civil Code, the substantive provision of the Consumers Legal Remedies Act ("CLRA"), proscribes the misrepresentation of facts in connection with a "transaction intended to result or which results in the sale or lease of goods or services to any consumer."

Where a plaintiff seeks to recover under the FAL or CLRA on the basis of precisely the same allegations made in support of a UCL claim, a court will consider the three causes of action under the same legal standard. That is, if the defendant has violated one, it has violated all. Conversely, if it has not violated one, it has violated none. *See, e.g.*, *Park v. Cytodyne Technologies, Inc.*, 2003 WL 21283814, *1[12] (Cal. Sup. May 30, 2003) (noting authority holding "that statements found to be not false or misleading under sections 17200 and 17500 *et seq*. are also not false representations under the CLRA;" applying same legal standard to section 17200 and section 17500 where the plaintiff's "factual allegations in these two causes of action [were] identical"); *Freeman v. Time, Inc.*, 68 F. 3rd 285, 290 (9th Cir. 1995) (holding that statement unable to support a UCL claim could likewise not support a claim under the CLRA). Because plaintiffs cannot plead a claim under the UCL, their FAL and CLRA claims must fail as well.

---

[12] This case could not be located on Lexis Nexis.

1  The CLRA claim further fails on at least one additional level. The CLRA prohibits
2  misrepresentations in any "transaction intended to result or which results in the sale or lease of
3  goods or services to any consumer." Cal. Civ. Code § 1770(a). But a transaction involving a
4  mere extension of credit, like the one alleged here, does not "result [ ] in the sale or lease of goods
5  or services." *See, e.g., Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 228
6  (2007) (tracing legislative history of CLRA to hold it does not extend to credit transactions
7  occurring separately from any specific purchase of goods or services); *McKell v. Washington*
8  *Mutual, Inc.*, 142 Cal. App. 4th 1457, 1465, 1488 (2nd Dist. 2006) (determining CLRA action
9  would not lie in case involving allegations of "overcharging plaintiffs for underwriting, tax
10 services, and wire transfer fees in conjunction with home loans" because "Plaintiffs cite no
11 authority or make no argument demonstrating that [lender's] actions were undertaken in a
12 transaction intended to result or which results in the sale or lease of goods or services") (emphasis
13 in original; internal marks omitted); *see also Jefferson v. Chase Home Finance LLC*, 2007 WL
14 1302984 *2-3, 2007 U.S. Dist. LEXIS 36298 *7 (N. D. Cal. May 3, 2007) (determining that
15 CLRA action would lie where loan servicer failed properly to account for monthly overpayments
16 after credit had been extended); *Van Slyke v. Capital One Bank*, 2007 WL 1655641 *3-4, 2007
17 U.S. Dist. LEXIS 44072 *8-12 ( N. D. Cal. June 07, 2007) (following *Berry* to hold that
18 extension of credit does not constitute the sale or lease of goods or services and distinguishing
19 *Jefferson* as involving provision of financial services as opposed to mere extension of credit);
20 *Fairbanks v. Superior Court*, 154 Cal. App. 4th 435, 442 (2nd Dist. 2007) (describing insurance
21 as a "financial transaction" analogous to the extension of credit discussed in *Berry* and stating that
22 "[a]n insurance contract is not something akin to a haircut, a plumbing repair, or a two-year
23 warranty on a microwave oven-it is simply an agreement to pay if and when an identifiable event
24 occurs").

### 3. Plaintiffs Seek Improper Remedies

26 Plaintiffs compound their inability to state any substantive claim by seeking remedies
27 unavailable even in a cognizable claim. It is a matter of black-letter law, for example, that a
28 private plaintiff can recover neither damages nor civil penalties under the UCL and FAL. *See,*

*e.g,. Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2001) ("While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered.") (citation omitted); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (C.D. Cal. 1998) (noting that "private remedies [under the FAL] are limited to equitable relief;" stating with respect to sections 17200 and 17500 that "civil penalties are recoverable only by specified public officers"). Nevertheless, plaintiffs here seek "statutory damages as provided by the [FAL]" and "exemplary and punitive damages as provided by the [UCL]" Compl. Prayer ¶¶ 4, 5. None of these remedies would be permitted even if plaintiffs had stated a claim.

## IV.   CONCLUSION

For the reasons given above, the Court should grant defendants' motion for failure to state a claim upon which relief can be granted and dismiss the action with prejudice.

Dated: September 12, 2007

WILLIAM F. ALDERMAN
IAN L. JOHNSON
JUSTIN M. ARAGON
Orrick, Herrington & Sutcliffe LLP

/s/  William F. Alderman
WILLIAM F. ALDERMAN
Attorneys for Defendants
NOVASTAR MORTGAGE, INC., NOVASTAR HOME MORTGAGE, INC., and NOVASTAR FINANCIAL, INC.

**PROOF OF SERVICE BY MAIL**

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, California 94105-2669. On September 12, 2007, I served the following document(s):

1. **DEFENDANTS' MOTION TO DISMISS; NOTICE OF MOTION; DEFENDANTS' OPENING BRIEF;**

2. **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF JULIA CONNELY IN SUPPORT OF MOTION TO DISMISS; AND**

3. **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; REQUEST FOR JUDICIAL NOTICE**

on the interested parties in this action by placing true and correct copies thereof in sealed envelope(s) addressed as follows:

Ari Y. Brown
BERGMAN & FROCKT
614 First Avenue, Fourth Floor
Seattle, WA 98104

Matthew Geyman
John W. Phillips
PHILLIPS LAW GROUP, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104-2682

I am employed in the county from which the mailing occurred. On the date indicated above, I placed the sealed envelope(s) for collection and mailing at this firm's office business address indicated above. I am readily familiar with this firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the firm's correspondence would be deposited with the United States Postal Service on this same date with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 12, 2007, at San Francisco, California.

/s/ Eloise Lee
Eloise Lee