# EXHIBIT A

MAY-19-2005  16:29    NOVA STAR HOME MORTGAGE    1 866 265 4702    P.14

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | □ VA  □ FHA | ☑ Conventional  □ USDA/Rural Housing Service | □ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount $ 361,000 | Interest Rate 8.200 % | No. of Months 360/360 | Amortization Type: | □ Fixed Rate  □ GPM | ☑ ARM (type): 2/28 Adjustable  □ Other (explain): |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 2751 79th AVENUE,  Oakland, CA 94605  County: Alameda | No. of Units |
|---|---|

Legal Description of Subject Property (attach description if necessary)    Year Built

| Purpose of Loan | □ Purchase  □ Construction  ☑ Refinance  □ Construction-Permanent | □ Other (explain): | Property will be: ☑ Primary Residence  □ Secondary Residence  □ Investment |
|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2004 | Original Cost $ 310,000 | Amount Existing Liens | Purpose of Refinance Cash-Out/Debt Consolidation | Describe Improvements □ made  □ to be made  Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) SEBASTIEN SANGES  CHRISTOPHE G KUBIAK | Manner in which Title will be held Joint tenants | Estate will be held in: ☑ Fee Simple  □ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | CHRISTOPHE G KUBIAK | Co-Borrower's Name (include Jr. or Sr. if applicable) SEBASTIEN SANGES |
| Social Security Number | Home Phone (incl. area code)  DOB (MM/DD/YYYY) Yrs. School | Social Security Number  Home Phone (incl. area code)  DOB (MM/DD/YYYY) Yrs. School    REDACTED |
| □ Married  ☑ Unmarried (include single, divorced, widowed)  □ Separated | Dependents (not listed by Co-Borrower) no. 0  ages | □ Married  ☑ Unmarried (include single, divorced, widowed)  □ Separated   Dependents (not listed by Borrower) no. 0  ages |
| Present Address (street, city, state, ZIP) ☑ Own □ Rent  1  No. Yrs. | | Present Address (street, city, state, ZIP) ☑ Own □ Rent  1  No. Yrs. |
| 2751 79th AVENUE  Oakland, CA 94605 | | 2751.79 AVENUE  Oakland, CA 94605 |
| Mailing Address, if different from Present Address | | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) □ Own ☑ Rent 2 No. Yrs. | Former Address (street, city, state, ZIP) □ Own ☑ Rent 2 No. Yrs. |
|---|---|
| 2630 BENVENUE AVENUE  Berkeley, CA 94704 | 2630 BENVENUE AVENUE  Berkeley, CA 94704 |

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | ☑ Self Employed | Yrs. on this job 10 yr(s)  Yrs. employed in this line of work/profession 10 | Name & Address of Employer EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710    ☑ Self Employed | Yrs. on this job 10 yr(s)  Yrs. employed in this line of work/profession 10 |
| Position/Title/Type of Business OWNER-CATERING | | Business Phone (incl. area code) 510-549-3760 | Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

Freddie Mac Form 65  01/04
Calyx Form 1003 Loanappt.frm 01/04

Page 1 of 4

Borrower _(signature)_
Co-Borrower _SS_

Fannie Mae Form 1003  01/04

05/19/2005  04:23PM

MAY-19-2005 16:30    A STAR HOME MORTGAGE    1 866 265 4702    P.15

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | $ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ |

REDACTED

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☑ Jointly  ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | |
| Face amount $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ | Net Worth (a minus b) ⇒ $ | Total Liabilities b. | $ |

REDACTED

| | |
|---|---|
| Freddie Mac Form 65   6 1/04 | Fannie Mae Form 1003   01/04 |
| Calyx Form 1003 Loanapp2.frm 01/04 | |

Borrower

Co-Borrower

Page 2 of 4

MAY-19-2005  16:31    NOVA STAR HOME MORTGAGE    1 866 265 4702    P.16

REDACTED

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2751 79 AVENUE Oakland, CA 94605 | S | $ ▆▆▆ | $ ▆▆▆ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | $ ▆▆▆ | $ ▆▆▆ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 328,635.00 |
| e. Estimated prepaid items | 2,359.11 |
| f. Estimated closing costs | 6,913.95 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 337,918.06 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 361,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 361,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -23,081.94 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U.S. citizen? | ☑ | ☐ | ☑ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☑ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☑ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | O | | O | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X | Date 05/20/05 | Co-Borrower's Signature X | Date 05/20/05 |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino  ☑ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☑ White |
| Sex: ☐ Female  ☑ Male | Sex: ☐ Female  ☑ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) CAROL GREMILLION | Name and Address of Interviewer's Employer Novastar Home Mortgage 11550 New Castle Ave, Suite 200 Baton Rouge, LA 70816 (P) 800-259-1039 (F) 800-493-1402 |
|---|---|---|
| | Interviewer's Signature  Date 4/19/05 | |
| | Interviewer's Phone Number (incl. area code) 800-259-1039 | |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp3.frm  01/04

Page 3 of 4

Fannie Mae Form 1003   01/04

05/19/2005  04:23PM

NS00007

MAY-19-2005  16:31     M**A STAR HOME MORTGAGE                1 866 265 4702     P.17

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-borrower. | Borrower:<br>CHRISTOPHE G KUBIAK |
| | Co-Borrower:<br>SEBASTIEN SANGES |

Agency Case Number:

Lender Case Number:

### VI.  ASSETS  AND  LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

REDACTED

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 05/20/05 | X | 05/20/05 |

Freddie Mac Form 65   01/04<br>CALYX Form 1003 Lnap4ast.frm 01/04

Page 4 of 4

Fannie Mae Form 1003   01/04

# EXHIBIT
# B

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | |

| Amount $ 361,000 | Interest Rate 8.500 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate  ☐ Other (explain): ☐ GPM  ☑ ARM (type): 2/28 Adjustable |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | | No. of Units |
|---|---|---|
| 2751 79th AVENUE,  Oakland, CA 94605  County: Alameda | | |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): ☑ Refinance  ☐ Construction-Permanent | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made |
|---|---|---|---|---|
| 2004 | $  310,000 | $ | Cash-Out/Debt Consolidation | Cost: $ |

| Title will be held in what Name(s) SEBASTIEN SANGES  CHRISTOPHE G KUBIAK | Manner in which Title will be held Joint tenants | Estate will be held in ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | CHRISTOPHE G KUBIAK | Co-Borrower's Name (include Jr. or Sr. if applicable) SEBASTIEN SANGES |

REDACTED

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☑ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.  0   ages | ☐ Married  ☑ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.  0   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  1  No. Yrs. | Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  1  No. Yrs. |
|---|---|
| 2751 79th AVENUE Oakland, CA 94605 | 2751 79 AVENUE Oakland, CA 94605 |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own  ☑ Rent  2  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☑ Rent  2  No. Yrs. |
|---|---|
| 2630 BENVENUE AVENUE Berkeley, CA 94704 | 2630 BENVENUE AVENUE Berkeley, CA 94704 |

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer  ☑ Self Employed | Yrs. on this job 10 yr/s | Name & Address of Employer  ☑ Self Employed | Yrs. on this job 10 yr(s) |
|---|---|---|---|
| EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | Yrs. employed in this line of work/profession 10 | EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | Yrs. employed in this line of work/profession 10 |

| Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 | Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65  01/04
Calyx Form 1003 Loanapp1.frm 01/04    Borrower _____    Page 1 of 4    Fannie Mae Form 1003  01/04
                                      Co-Borrower _____

NS00009

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ |

REDACTED

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☒ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | | LIABILITIES | | |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ | Net Worth (a minus b) ► $ | Total Liabilities b. | $ |

REDACTED

Freddie Mac Form 65   0 1/04
Calyx Form 1003 Loanapp2.frm 04/04

Page 2 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003   01/04

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2751 79 AVENUE Oakland, CA 94605 | SFR | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ |
| | | | | | | | |
| Totals | | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ |

REDACTED

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | 
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 327,365.00 |
| e. Estimated prepaid items | 3,614.53 |
| f. Estimated closing costs | 9,006.95 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 339,987.48 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits(explain) | |
| | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 361,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 361,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -21,012.52 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☑ | ☐ |
| k. Are you a permanent resident alien? | ☑ | ☐ | ☑ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☑ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☑ White | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☑ White |
| Sex: | ☐ Female   ☑ Male | Sex: | ☐ Female   ☑ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | CAROL GREMILLION | Novastar Home Mortgage 11550 New Castle Ave. Suite 200 Baton Rouge, LA 70816 (P) 800-259-1039 (F) 800-493-1402 |
| | Interviewer's Signature   Date Carol Gremillion  4/19/05 | |
| | Interviewer's Phone Number (incl. area code) 800-259-1039 | |

Freddie Mac Form 65    01/04
Calyx Form 1003 Loanapp3.frm  01/04

Page 3 of 4

Fannie Mae Form 1003    01/04

NS00011

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: CHRISTOPHE G KUBIAK |
| | Co-Borrower: SEBASTIEN SANGES |

Agency Case Number:

Lender Case Number:

### ASSETS AND LIABILITIES

| ASSETS Name and address of Bank, S&L, or Credit Union | Cash or Market Value | LIABILITIES Name and address of Company | Monthly Payment & Months Left to Pay $ Payt./Mos. | Unpaid Balance $ |
|---|---|---|---|---|
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

REDACTED

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|

# EXHIBIT
# C

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA    ☑ Conventional    ☐ Other (explain): ☐ FHA    ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $ 361,000 | Interest Rate 7.875 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate    ☐ Other (explain): ☐ GPM    ☑ ARM (type): 2/28 Adjustable |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 2751 79TH AVENUE,  Oakland, CA 94605   County: Alameda | No. of Units |
|---|---|

Legal Description of Subject Property (attach description if necessary)

Year Built

| Purpose of Loan | ☐ Purchase    ☐ Construction ☑ Refinance    ☐ Construction-Permanent    ☐ Other (explain): | Property will be: ☑ Primary Residence   ☐ Secondary Residence   ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2004 | Original Cost $ 310,000 | Amount Existing Liens $ | Purpose of Refinance Cash-Out/Debt Consolidation | Describe Improvements ☐ made   ☐ to be made Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) SEBASTIEN SANGES CHRISTOPHE G KUBIAK | Manner in which Title will be held Joint tenants | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | CHRISTOPHE G KUBIAK | Co-Borrower's Name (include Jr. or Sr. if applicable)  SEBASTIEN SANGES |

REDACTED

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married   ☑ Unmarried (include single, ☐ Separated    divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0   ages | ☐ Married   ☑ Unmarried (include single, ☐ Separated    divorced, widowed) | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent  1  No. Yrs. 2751 79TH AVENUE Oakland, CA 94605 | Present Address (street, city, state, ZIP) ☑ Own ☐ Rent  1  No. Yrs. 2751 79 AVENUE Oakland, CA 94605 |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☑ Rent  2  No. Yrs. 2630 BENVENUE AVENUE Berkeley, CA 94704 | Former Address (street, city, state, ZIP) ☐ Own ☑ Rent  2  No. Yrs. 2630 BENVENUE AVENUE Berkeley, CA 94704 |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer  ☑ Self Employed EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | Yrs. on this job 10 yr(s) Yrs. employed in this line of work/profession 10 | Name & Address of Employer  ☑ Self Employed EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | Yrs. on this job 10 yr(s) Yrs. employed in this line of work/profession 10 |
|---|---|---|---|

| Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 | Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp1.frm 01/04

Page 1 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003   01/04

NS00013

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ ▮▮▮▮ | $ ▮▮▮▮ | $ ▮▮▮▮ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | $ | $ ▮▮▮▮ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | ▮▮▮▮ | ▮▮▮▮ |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ ▮▮▮▮ | $ ▮▮▮▮ | $ ▮▮▮▮ | Total | $ | $ ▮▮▮▮ |

REDACTED

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**  *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed  ☑ Jointly  ☐ Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| | | | LIABILITIES | | |
| **List checking and savings accounts below** | | Name and address of Company | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | ▮▮▮▮ | | |
| | | Acct. no. ▮▮▮▮ | | | |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | ▮▮▮▮ | | | |
| | | Acct. no. ▮▮▮▮ | | * | ▮▮▮▮ |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | ▮▮▮▮ | | | |
| | | Acct. no. ▮▮▮▮ | | * | ▮▮▮▮ |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. ▮▮▮▮ | | * | ▮▮▮▮ |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | |
| Stocks & Bonds (Company name/ number & description) | $ | ▮▮▮▮ | | | |
| | ▮▮▮▮ | Acct. no. ▮▮▮▮ | | | ▮▮▮▮ |
| | | Name and address of Company | | $ Payment/Months | |
| Life insurance net cash value | $ | | | | |
| Face amount: $ | | | | | |
| Subtotal Liquid Assets | $ | Acct. no. ▮▮▮▮ | | $ Payment/Months | |
| Real estate owned (enter market value from schedule of real estate owned) | $ ▮▮▮▮ | Name and address of Company | | | |
| Vested interest in retirement fund | $ | ▮▮▮▮ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | Acct. no. ▮▮▮▮ | | | ▮▮▮▮ |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | | | | |
| | | Job Related Expense (child care, union dues, etc.) | | $ | |
| | | Total Monthly Payments | | $ | |
| Total Assets a. | $ ▮▮▮▮ | Net Worth (a minus b) | $ ▮▮▮▮ | Total Liabilities b. | $ ▮▮▮▮ |

Freddie Mac Form 65   01/04<br>
Calyx Form 1003 Loanapp2.fm 01/04

Borrower _____

Co-Borrower _____

Page 2 of 4

Fannie Mae Form 1003   01/04

NS00014

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

REDACTED

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2751 79 AVENUE<br>Oakland, CA 94605 | SFR | $ ▮▮ | $ ▮▮ | $ | $ ▮▮ | $ | $ |
|  |  | $ | $ | $ | $ | $ | $ |
|  |  | $ | $ | $ | $ | $ | $ |
| Totals | | $ ▮▮ | $ ▮▮ | $ | $ ▮▮ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
|  |  |  |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 326,895.00 |
| e. Estimated prepaid items | 3,512.81 |
| f. Estimated closing costs | 9,976.95 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 340,384.76 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 361,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 361,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -20,615.24 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U.S. citizen? | ☐ | ☑ | ☐ | ☑ |
| k. Are you a permanent resident alien? | ☑ | ☐ | ☑ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☑ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander   ☑ White | | ☐ Native Hawaiian or Other Pacific Islander   ☑ White |
| Sex: | ☐ Female   ☑ Male | Sex: | ☐ Female   ☑ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type)<br>CAROL GREMILLION | Name and Address of Interviewer's Employer<br>Novastar Home Mortgage |
|---|---|---|
| ☐ Face-to-face interview<br>☐ Mail<br>☑ Telephone<br>☐ Internet | Interviewer's Signature        Date<br>Carol Gremillion      4/9/05 | 11550 New Castle Ave. Suite 200<br>Baton Rouge, LA 70816<br>(P) 800-259-1039<br>(F) 800-493-1402 |
| | Interviewer's Phone Number (incl. area code)<br>800-259-1039 | |

## Continuation Sheet Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **CHRISTOPHE G KUBIAK** |
| | Co-Borrower: **SEBASTIEN SANGES** |

Agency Case Number:

Lender Case Number:

## ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. $ | | Acct. No. | | |

REDACTED

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65   0 1/04
CALYX Form 1003 Lnap4ast.fm 01/04

Page 4 of 4

Fannie Mae Form 1003    01/04

NS00016

# EXHIBIT D

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☑ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount $  361,000 | Interest Rate 7.990  % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☑ ARM (type): 2/28 Adjustable |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | No. of Units |
|---|---|
| 2751 79th AVENUE   Oakland, CA 94605   County: Alameda | |

Legal Description of Subject Property (attach description if necessary)                                    Year Built

| Purpose of Loan | ☐ Purchase ☑ Refinance | ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 2004 | $  310,000 | $ | Cash-Out/Debt Consolidation | Cost: $ |

| Title will be held in what Name(s) SEBASTIEN SANGES CHRISTOPHE G KUBIAK | Manner in which Title will be held Joint tenants | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | CHRISTOPHE G KUBIAK | Co-Borrower's Name (include Jr. or Sr. if applicable) SEBASTIEN SANGES |

REDACTED

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) Yrs. School | Social Security Number | Home Phone (incl. area code) DOB (MM/DD/YYYY) Yrs. School |
| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0   ages | | ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. 0   ages |
| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent  1  No. Yrs. | | | Present Address (street, city, state, ZIP) ☑ Own ☐ Rent  1  No. Yrs. | |
| 2751 79th AVENUE Oakland, CA 94605 | | | 2751 79 AVENUE Oakland, CA 94605 | |
| Mailing Address, if different from Present Address | | | Mailing Address, if different from Present Address | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | ☑ Self Employed | Yrs. on this job 10 yr(s) | Name & Address of Employer ☑ Self Employed | Yrs. on this job 10 yr(s) |
| EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | | Yrs. employed in this line of work/profession .10 | EVENT INC-La Bonne Cuisine 1030 MURRAY STREET Berkeley, CA 94710 | Yrs. employed in this line of work/profession 10 |
| Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 | | Position/Title/Type of Business OWNER-CATERING | Business Phone (incl. area code) 510-549-3760 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|
| | | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|
| | | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ |

REDACTED

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: | |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| List checking and savings accounts below | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ | Net Worth (a minus b) | $ | Total Liabilities b. | $ |

REDACTED

Borrower
Co-Borrower

Fannie Mae Form 1003   01/04

NS00018

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

REDACTED

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2751 79 AVENUE Oakland, CA 94605 | SFR | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ |
| Totals | | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ ▓ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 325,895.00 |
| e. Estimated prepaid items | 3,529.87 |
| f. Estimated closing costs | 9,976.95 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 340,401.82 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 361,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 361,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -20,598.18 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | Co-Borrower |
|---|---|---|
| | Yes  No | Yes  No |
| a. Are there any outstanding judgments against you? | ☐ ☑ | ☐ ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☑ | ☐ ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☑ | ☐ ☑ |
| d. Are you a party to a lawsuit? | ☐ ☑ | ☐ ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ ☑ | ☐ ☑ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☑ | ☐ ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☑ | ☐ ☑ |
| h. Is any part of the down payment borrowed? | ☐ ☑ | ☐ ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ ☑ | ☐ ☑ |
| j. Are you a U.S. citizen? | ☐ ☑ | ☐ ☑ |
| k. Are you a permanent resident alien? | ☐ ☑ | ☐ ☑ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ ☐ | ☑ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ ☐ | ☑ ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | PR |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | O | O |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that I may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☑ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander   ☑ White | |
| Sex: | ☐ Female   ☑ Male | |

**CO-BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☑ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander   ☑ White | |
| Sex: | ☐ Female   ☑ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | CAROL GREMILLION | Novastar Home Mortgage 11550 NEW CASTLE AVE Baton Rouge, LA 70816 (P) 800-259-1039 (F) 800-493-1402 |
| | Interviewer's Signature   Carol Gremillion   Date 4/17/05 | |
| | Interviewer's Phone Number (incl. area code) 800-259-1039 | |

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: CHRISTOPHE G KUBIAK | Agency Case Number: |
| Co-Borrower: SEBASTIEN SANGES | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

REDACTED

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date | Co-Borrower's Signature: X | Date |

# EXHIBIT E

# GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: CHRISTOPHE G KUBIAK / SEBASTIEN SANGES | Application No: SANGESSEBASTIEN |
| Property Addr: 2751 79th AVENUE, Oakland, CA 94605 | Date Prepared: 04/19/2005 |
| Prepared By: Novastar Home Mortgage   Ph. 800-259-1039 | Loan Program: 2/28 ADJ |
| 11550 NEW CASTLE AVE, Baton Rouge, LA 70816 | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ 361,000    Interest Rate: 7.990 %    Term: 360 / 360 mths

| | **800 ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | 1.500% | $ 5,415.00 | ✓ | | | |
| 802 | Loan Discount | | | | | | |
| 803 | Appraisal Fee | | (350.00) | | | | ✓ |
| 804 | Credit Report | | | | | | |
| 805 | Lender's Inspection Fee | | | | | | |
| 808 | Mortgage Broker Fee | | | | | | |
| 809 | Tax Related Service Fee | | 57.00 | ✓ | | | |
| 810 | Processing Fee | | 495.00 | ✓ | | | |
| 811 | Underwriting Fee | | 595.00 | ✓ | | | |
| 812 | Wire Transfer Fee | | | | | | |
| | ADMINISTRATION FEE | | 495.00 | ✓ | | | |
| | MERS | | 3.95 | ✓ | | | |
| | FLOOD CERT | | 16.00 | ✓ | | | |
| | Yield Spread Premium 0-3% | | | ✓ | | | |

| | **1100 TITLE CHARGES** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1101 | Closing or Escrow Fee: | | $ 200.00 | | | | |
| 1105 | Document Preparation Fee | | | | | | |
| 1106 | Notary Fees | | | | | | |
| 1107 | Attorney Fees | | | | | | |
| 1108 | Title Insurance: | | 2,000.00 | | | | |
| | TITLE SEARCH | | 250.00 | | | | |
| | TITLE EXAM | | 250.00 | | | | |

| | **1200 GOVERNMENT RECORDING & TRANSFER CHARGES** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1201 | Recording Fees: | | $ 200.00 | | | | |
| 1202 | City/County Tax/Stamps: | | | | | | |
| 1203 | State Tax/Stamps: | | | | | | |

| | **1300 ADDITIONAL SETTLEMENT CHARGES** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | | | | |

| | | *Estimated Closing Costs* | 9,976.95 | | | | |
|---|---|---|---|---|---|---|---|

| | **900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 901 | Interest for | 15 days @ $ 79.0244 per day | $ 1,185.37 | ✓ | | | |
| 902 | Mortgage Insurance Premium | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | |
| 904 | | | | | | | |
| 905 | VA Funding Fee | | | | | | |

| | **1000 RESERVES DEPOSITED WITH LENDER** | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 6 months @ $ 77.00 per month | $ 462.00 | | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ per month | | | | | |
| 1003 | School Tax | months @ $ per month | | | | | |
| 1004 | Taxes and Assessment Reserves | 6 months @ $ 313.75 per month | 1,882.50 | | | | |
| 1005 | Flood Insurance Reserves | months @ $ per month | | | | | |
| | | months @ $ per month | | | | | |
| | | months @ $ per month | | | | | |

| | | *Estimated Prepaid Items/Reserves* | 3,529.87 | |
|---|---|---|---|---|
| | TOTAL ESTIMATED SETTLEMENT CHARGES | | 13,506.82 | |
| | **COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds)** | | | PFC S F POC |
| | YSP 0-3% | | | |

| **TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:** | | **TOTAL ESTIMATED MONTHLY PAYMENT:** | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 326,895.00 | New First Mortgage(-) | Principal & Interest | 2,646.37 |
| Loan Amount (-) | 361,000.00 | Sub Financing(-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 9,976.95 | New 2nd Mtg Closing Costs(+) | Hazard Insurance | 77.00 |
| Est. Prepaid Items/Reserves (+) | 3,529.87 | | Real Estate Taxes | 313.75 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| **Total Est. Funds to you** | 20,598.18 | **Total Monthly Payment** | 3,037.12 |

☐ This Good Faith Estimate is being provided by _____, a mortgage broker, and no lender has been obtained.  These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.  The undersigned acknowledges receipt of the booklet "Settlement Costs", and if applicable the Consumer Handbook on ARM Mortgages.

| | | | | |
|---|---|---|---|---|
| Applicant   CHRISTOPHE G KUBIAK | Date | Applicant   SEBASTIEN SANGES | Date |

Calyx Form gfe.frm 11/01

NS00001

## GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Applicants:   CHRISTOPHE G KUBIAK
              SEBASTIEN SANGES
Property Address:   2751 79th AVENUE
                    Oakland, CA 94605
Application No:   SANGESSEBASTIEN

Prepared By:   Novastar Home Mortgage
               11550 NEW CASTLE AVE
               Baton Rouge , LA 70816
               800-259-1039
Date Prepared: 04/19/2005

Lender requires use of the following provider(s) of settlement services   (if none are listed,
Lender does not require the use of specified providers):

Provider  Nations Title
Address   13348 Coursey Blvd
          Baton Rouge, LA 70816
Phone     225-752-5573

Provider  Swafford and Hays
Address   9041 Executive Pk Drive
          Knoxville , TN 37923
Phone     1-888-272-291

Services to be rendered by this provider are
items number

Services to be rendered by this provider are
items number

above and the amounts listed are based upon
the charges of this provider. If checked,
Lender has the following type of business
relationship with this provider:

above and the amounts listed are based upon
the charges of this provider. If checked,
Lender has the following type of business
relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment,
    franchise or other business relationship
    with Lender.

[ ] Within the last 12 months, the provider has
    maintained an account with Lender or
    had an outstanding loan or credit
    arrangement with Lender.

[√] Within the last 12 months, Lender has
    repeatedly used or required borrowers to
    use the services of this provider.

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment,
    franchise or other business relationship
    with Lender.

[ ] Within the last 12 months, the provider has
    maintained an account with Lender or
    had an outstanding loan or credit
    arrangement with Lender.

[√] Within the last 12 months, Lender has
    repeatedly used or required borrowers to
    use the services of this provider.

Applicant  CHRISTOPHE G KUBIAK               Date

Applicant                                    Date

Applicant  SEBASTIEN SANGES                  Date

Applicant                                    Date

CALYX Form Gfepr.hp 2/99

NS00002

# EXHIBIT F

# GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: CHRISTOPHE G KUBIAK / SEBASTIEN SANGES | Application No: SANGESSEBASTIEN |
| Property Addr: 2751 79th  AVENUE, Oakland, CA 94605 | Date Prepared: 04/19/2005 |
| Prepared By: Novastar Home Mortgage  Ph. 800-259-1039 | Loan Program: 2/28 ADJ |
| 11550 New Castle Ave. Suite 200, Baton Rouge, LA 70816 | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed.  The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $     361,000     Interest Rate:     8.500   %     Term:   360 / 360   mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | 1.500% | | $ | 5,415.00 | √ | | |
| 802 | Loan Discount | | | | | | | |
| 803 | Appraisal Fee | | | | | | | √ |
| 804 | Credit Report | | | | (350.00) | | | √ |
| 805 | Lender's Inspection Fee | | | | | | | |
| 808 | Mortgage Broker Fee | | | | | | | |
| 809 | Tax Related Service Fee | | | | 57.00 | √ | | |
| 810 | Processing Fee | | | | 495.00 | √ | | |
| 811 | Underwriting Fee | | | | 595.00 | √ | | |
| 812 | Wire Transfer Fee | | | | | | | |
| | ADMINISTRATION FEE | | | | 495.00 | √ | | |
| | MERS | | | | 3.95 | √ | | |
| | FLOOD CERT | | | | 16.00 | √ | | |
| | Yield Spread Premium 0-3% | | | | | | | |

| 1100 | TITLE CHARGES | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1101 | Closing or Escrow Fee: | | $ | 200.00 | √ | | | |
| 1105 | Document Preparation Fee | | | | | | | |
| 1106 | Notary Fees | | | | | | | |
| 1107 | Attorney Fees | | | | | | | |
| 1108 | Title Insurance: | Fidelity National Title CA - ALTA | | 1,030.00 | | | | |
| | TITLE SEARCH | | | 250.00 | | | | |
| | TITLE EXAM | | | 250.00 | | | | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1201 | Recording Fees: | | $ | 200.00 | | | | |
| 1202 | City/County Tax/Stamps: | | | | | | | |
| 1203 | State Tax /Stamps: | | | | | | | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | | | | | | |

| | | Estimated Closing Costs | | 9,006.95 | | | | |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 901 | Interest for     15     days @ $     84.0685     per day | | $ | 1,261.03 | √ | | | |
| 902 | Mortgage Insurance Premium | | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | | |
| 904 | | | | | | | | |
| 905 | VA Funding Fee | | $ | | | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 6 months @ $ | 78.50 | per month | $ | 471.00 | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | | | | | |
| 1003 | School Tax | months @ $ | | per month | | | | | |
| 1004 | Taxes and Assessment Reserves | 6 months @ $ | 313.75 | per month | | 1,882.50 | | | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | | | | | |
| | | months @ $ | | per month | | | | | |
| | | months @ $ | | per month | | | | | |

| | | Estimated Prepaid Items/Reserves | | 3,614.53 | |
|---|---|---|---|---|---|
| | TOTAL ESTIMATED SETTLEMENT CHARGES | | | 12,621.48 | |

| COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds) | | | |
|---|---|---|---|
| YSP 0-3% | | $ | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 327,366.00 | New First Mortgage (-) | Principal & Interest | 2,775.78 |
| Loan Amount (-) | 351,000.00 | Sub Financing (-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 9,006.95 | New 2nd Mtg Closing Costs (+) | Hazard Insurance | 78.50 |
| Est. Prepaid Items/Reserves (+) | 3,614.53 | | Real Estate Taxes | 313.75 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| Total Est. Funds to you | 21,012.52 | Total Monthly Payment | 3,168.03 | |

☐ This Good Faith Estimate is being provided by _____, a mortgage broker, and no lender has obtained.  These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.  The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

| | | | |
|---|---|---|---|
| Applicant   CHRISTOPHE G KUBIAK | Date | Applicant   SEBASTIEN SANGES | Date |

Calyx Form gfe.frm 11/01

NS00003

# GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Applicants:   CHRISTOPHE G KUBIAK
              SEBASTIEN SANGES
Property Address:   2751 79th AVENUE
                    Oakland, CA 94605
Application No:   SANGESSEBASTIEN

Prepared By:   Novastar Home Mortgage
               11550 New Castle Ave. Suite 200
               Baton Rouge , LA 70816
               800-259-1039
Date Prepared: 04/19/2005

Lender requires use of the following provider(s) of settlement services   (If none are listed,
Lender does not require the use of specified providers):

Provider   Nations Title
Address   13348 Coursey Blvd
          Baton Rouge, LA 70816
Phone     225-752-5673

Provider   Swafford and Hays
Address   9041 Executive Pk Drive
          Knoxville , TN 37923
Phone     1-888-272-291

Services to be rendered by this provider are
items number
_____

Services to be rendered by this provider are
items number
_____

above and the amounts listed are based upon
the charges of this provider. If checked,
Lender has the following type of business
relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment,
    franchise or other business relationship
    with Lender.

[ ] Within the last 12 months, the provider has
    maintained an account with Lender or
    had an outstanding loan or credit
    arrangement with Lender.

[✓] Within the last 12 months, Lender has
    repeatedly used or required borrowers to
    use the services of this provider.

above and the amounts listed are based upon
the charges of this provider. If checked,
Lender has the following type of business
relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment,
    franchise or other business relationship
    with Lender.

[ ] Within the last 12 months, the provider has
    maintained an account with Lender or
    had an outstanding loan or credit
    arrangement with Lender.

[✓] Within the last 12 months, Lender has
    repeatedly used or required borrowers to
    use the services of this provider.

Applicant   CHRISTOPHE G KUBIAK          Date

Applicant   SEBASTIEN SANGES          Date

Applicant          Date

Applicant          Date

CALYX Form Glepr.hp 2/99

NS00004

# EXHIBIT
# G

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicants:  **CHRISTOPHE G KUBIAK**
**SEBASTIEN SANGES**

Property Address:  **2751 79th AVENUE**
**Oakland, CA 94605**

Application No:  **SANGESSEBASTIEN**

Prepared By:  Novastar Home Mortgage
11550 New Castle Ave. Suite 200
Baton Rouge , LA 70816
800-259-1039

Date Prepared: 04/19/2005

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 9.520 % | $ * 731,143.65 | $ * 352,462.02 | $ * 1,083,605.67 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 24 | 2,775.78 | | | | | | | |
| 335 | 3,026.74 | | | | | | | * |
| 1 | 3,029.05 | | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☑ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $          for a one year term.
**SECURITY:** You are giving a security interest in: 2751 79 AVENUE, Oakland CA 94605
☐ The goods or property being purchased  ☑ Real property you already own.
**FILING FEES:** $
**LATE CHARGE:** If a payment is more than   15 days late, you will be charged   5.000 % of the payment
**PREPAYMENT:** If you pay off early, you
☑ may  ☐ will not  have to pay a penalty.
☐ may  ☑ will not  be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may  ☐ may, subject to conditions  ☑ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate  ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| CHRISTOPHE G KUBIAK | (Applicant) | (Date) | SEBASTIEN SANGES | (Applicant) | (Date) |
|---|---|---|---|---|---|
| | (Applicant) | (Date) | | (Applicant) | (Date) |
| | (Lender) | (Date) | | | |

Calyx Form - til.hp (02/95)

## TRUTH-IN-LENDING DISCLOSURE (FOR SECTION 32 MORTGAGES)

| NAME(S)/ADDRESS(ES) OF BORROWER(S) ("Borrower," "you" or "your") | NAME(S)/ADDRESS(ES) OF LENDER (CREDITOR) ("Lender," "us" or "our") |
|---|---|
| CHRISTOPHE G KUBIAK<br>SEBASTIEN SANGES<br>2751 79th AVENUE<br>Oakland, CA 94605 | Novastar Home Mortgage<br>11550 New Castle Ave, Suite 200<br>Baton Rouge, LA 70816 |

PROPERTY ADDRESS

2751 79th AVENUE, Oakland, CA 94605

### NOTICE

You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the Lender will have a mortgage on your home. **YOU COULD LOSE YOUR HOME AND ANY MONEY YOU HAVE PUT INTO IT, IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.**

You are borrowing $ 361,000.00    (optional credit insurance ☐ is ☑ is not included in this amount).

The annual percentage rate on your loan will be    9.520 %.

Your regular Monthly    payment will be $ 2,646.37
☐ At the end of your loan, you will still owe us: $

☑ Your interest rate may increase. Increases in the interest rate could increase your payment.
   The highest amount your payment could increase to is  3,021.68

| LOAN NUMBER | TRANSACTION DATE |
|---|---|
| SANGESSEBASTIEN | 04/19/2005 |

SIGNATURES

By signing below you acknowledge receipt of a completed copy of this disclosure. You understand that this is not a contract and does not reflect all of the terms and conditions of the mortgage transaction to which the disclosures in this form relate.

X_____  DATE          X_____  DATE
CHRISTOPHE G KUBIAK                          SEBASTIEN SANGES

Calyx Form - highltl.frm (05/02)

# EXHIBIT H

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | |
|---|---|---|
| Applicants: | CHRISTOPHE G KUBIAK<br>SEBASTIEN SANGES | Prepared By: Novastar Home Mortgage<br>11550 NEW CASTLE AVE |
| Property Address: | 2751 79th AVENUE<br>Oakland, CA 94605 | Baton Rouge , LA 70816<br>800-259-1039 |
| Application No: | SANGESSEBASTIEN | Date Prepared: 04/19/2005 |

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate | FINANCE CHARGE<br><br>The dollar amount the credit will cost you | AMOUNT FINANCED<br><br>The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS<br><br>The amount you will have paid after making all payments as scheduled |
|---|---|---|---|
| * 9.413 % | $ * 726,256.69 | $ * 352,537.68 | $ * 1,078,794.37 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments** | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 24 | 2,646.37 | | | | | | | |
| 335 | 3,021.68 | | | | | | | |
| 1 | 3,018.69 | | | | | | | |

☐ DEMAND FEATURE: This obligation has a demand feature.
☑ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☑ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $                     for a one year term.
SECURITY: You are giving a security interest in: 2751 79 AVENUE, Oakland CA 94605
☐ The goods or property being purchased   ☑ Real property you already own.
FILING FEES: $
LATE CHARGE: If a payment is more than    15 days late, you will be charged    5.000 % of the payment.
PREPAYMENT: If you pay off early, you
☑ may   ☐ will not   have to pay a penalty.
☐ may   ☑ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may   ☐ may, subject to conditions   ☑ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate      ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | |
|---|---|---|---|
| CHRISTOPHE G KUBIAK | (Applicant) (Date) | SEBASTIEN SANGES | (Applicant) (Date) |
| | (Applicant) (Date) | | (Applicant) (Date) |
| | (Lender) (Date) | | |

Calyx Form - til.hp (02/95)

## TRUTH-IN-LENDING DISCLOSURE (FOR SECTION 32 MORTGAGES)

| NAME(S)/ADDRESS(ES) OF BORROWER(S) ("Borrower," "you" or "your") | NAME(S)/ADDRESS(ES) OF LENDER (CREDITOR) ("Lender," "us" or "our") |
|---|---|
| CHRISTOPHE G KUBIAK<br>SEBASTIEN SANGES<br>2751 79th AVENUE<br>Oakland, CA 94605 | Novastar Home Mortgage<br>11550 NEW CASTLE AVE<br>Baton Rouge, LA 70816 |

**PROPERTY ADDRESS**

2751 79th AVENUE, Oakland, CA 94605

**NOTICE**

You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the Lender will have a mortgage on your home. **YOU COULD LOSE YOUR HOME AND ANY MONEY YOU HAVE PUT INTO IT, IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.**

You are borrowing $ 361,000.00     (optional credit insurance ☐ is ☑ is not included in this amount).

The annual percentage rate on your loan will be    9.413 %.

Your regular   Monthly    payment will be $ 2,646.37
☐ At the end of your loan, you will still owe us: $

☑ Your interest rate may increase.  Increases in the interest rate could increase your payment.
   The highest amount your payment could increase to is   3,021.68

| LOAN NUMBER | TRANSACTION DATE |
|---|---|
| SANGESSEBASTIEN | 04/19/2005 |

**SIGNATURES**

By signing below you acknowledge receipt of a completed copy of this disclosure. You understand that this is not a contract and does not reflect all of the terms and conditions of the mortgage transaction to which the disclosures in this form relate.

X _____     X _____
CHRISTOPHE G KUBIAK            DATE        SEBASTIEN SANGES            DATE

Calyx Form - high8l.frm (05/02)

# EXHIBIT I

# SERVICING DISCLOSURE STATEMENT

Lender:   Novastar Home Mortgage
          11550 NEW CASTLE AVE
          Baton Rouge , LA 70816

Date:   04/19/2005

NOTICE TO FIRST LIEN    MORTGAGE LOAN APPLICANTS:  THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS.   IF YOUR LOAN IS MADE,  SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS.  SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights.  It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer.  "Servicing" refers to collecting your principal, interest and escrow account payments, if any.  If your loan servicer changes, there are certain procedures that must be followed.  This statement generally explains those procedures.

## Transfer practices and requirements

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer.  The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer.  The new loan servicer must also send you notice within 15 days after the effective date of the transfer.  The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer.  The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement.  The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information.  They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions.  During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## Complaint Resolution

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, whether or not your loan servicing is transferred.  If you send a "qualified written request" to your servicer, then your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request.  Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute.  During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## Damages and Costs

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1.  The following is the best estimate of what will happen to the servicing of your mortgage loan:

    A. ☐ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.

        We are able to service your loan, and we
        ☐ will service your loan.
        ☐ will not service your loan.
        ☐ haven't decided whether to service your loan.

    B. ☑ We do not service mortgage loans  ☑ and we have not serviced mortgage loans in the past three years.
        We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

2.  For all mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

    _____ 0 to 25%      _____ 26 to 50%      _____ 51 to 75%      __✓__ 76 to 100%

    This estimate  ☑ does  ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries.

    This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  A. ☑ We have previously assigned, sold, or transferred the servicing of mortgage loans.

    B. ☑ This is our record of transferring the servicing of mortgage loans we have made in:

    | Year | Percentage of Loans Transferred | |
    |------|------|---|
    | 2004 | 100 | % |
    | 2003 | 100 | % |
    | 2002 | 100 | % |

    This information  ☑ does  ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries.

**Acknowledgment of Mortgage Loan Applicant(s)**

I/We have read and understood the disclosure; and understand that the disclosure is a required part of the mortgage application as evidenced by my/our signature(s) below;

| Applicant   CHRISTOPHE G KUBIAK | Date | Applicant   SEBASTIEN SANGES | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |

# EXHIBIT J

| FROM: | NOVASTAR HOME MORTGAGE, INC.<br>888 West Big Beaver Rd. Suite 1100<br>Troy, Michigan 48084 | Document Date: MAY 20, 2005 |
| | | Closing Date: MAY 25, 2005 |
| | | Disbursement: MAY 25, 2005 |
| TO: | NATIONS<br>13349 COURSEY | Case No.: |
| | | Loan No.: 05-638465 |
| | Phone: (225)756-1576 | App. No.: |
| ATTN: | CLOSING DAMITA LEWIS | Order No.: |
| RE: | Borrower(s): CHRISTOPHER KUBIAK,<br>SEBASTIEN SANGES | Escrow No.: 05LA04779 |
| | Property Address: 2751 79TH AVENUE<br>OAKLAND, CALIFORNIA 94605 | |

## SPECIFIC CLOSING INSTRUCTIONS

**LOAN TERMS:**

Loan Amount: $361,000.00
Initial Advance:
Sales Price:
Term (Months): 360
Interest Rate: 8.20
Monthly P&I: $2,699.39
First Payment Date: JULY 1, 2005
Last Payment Date: JUNE 1, 2035

ARM Loan: (X) Yes   ( ) No
Index: 3.480
Margin: 6.300
First Rate Cap: 3.000
Periodic Rate Cap: 1.000
Lifetime Rate Cap: 7.000
Lifetime Rate Floor: 8.200
Interest Change Date: JUNE 1, 2007
Payment Change Date: JULY 1, 2007
Loan Purpose: REFINANCE

**PAYOFF REQUIREMENTS:**

**WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION**

**TITLE INSURANCE REQUIREMENTS:**

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 1ST LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: CHRISTOPHER KUBIAK, A SINGLE MAN AND SEBASTIEN SANGES, A SINGLE MAN, AS JOINT TENANTS.

3. Title Policy must contain the following endorsements (or their equivalents): 8.1, 100, 116, ALTA 9 AND 6

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) we do not allow Short Form Policies; (iii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable: (PAY ALL TAXES CURRENT)
(iv) other items as permitted by us; and (v) the following items as shown on the preliminary title report, commitment, binder or equivalent dated APRIL 13, 2005

**SECONDARY FINANCING:**

Secondary financing in the amount of $ N/A                    has been approved.

NS00021

**ESTIMATE OF FEES AND COSTS:**

| ITEM: | AMOUNT | POC | PAID BY |
|---|---|---|---|
| ORIGINATION FEE  to: NOVASTAR HOME MORTGAGE, | 5,415.00 | | Borrower |
| PROCESSING  to: NOVASTAR HOME MORTGAGE, INC. | 295.00 | .00 | Borrower |
| ADMINISTRATION  to: NOVASTAR HOME MORTGAGE, I | 295.00 | .00 | Borrower |
| SETTLEMENT | 250.00 | .00 | Borrower |
| TITLE SEARCH | 200.00 | .00 | Borrower |
| TITLE EXAM | 250.00 | .00 | Borrower |
| ENDORSEMENTS | 50.00 | .00 | Borrower |
| TITLE INS. | 943.00 | .00 | Borrower |
| RECORDING | 60.00 | .00 | Borrower |
| TAX SERVICE FIRST AMERICAN REAL ESTAT to: NOV | 141.00 | .00 | Borrower |
| FLOOD CERT. NATIONWIDE TOTAL/FLOOD SER to: NOV | 64.00 | .00 | Borrower |
| MERS FEE MERS to: NOVASTAR HOME MORTGAGE, INC | 3.00 | .00 | Borrower |
| UNDERWRITING  to: NOVASTAR HOME MORTGAGE, INC | 595.00 | .00 | Borrower |

Subtotal of Estimated Fees and Costs: $    8,957.95

**PER DIEM INTEREST:**

From: 05/25/05        To 06/01/05
(Anticipated Closing Date)

7    days at $   81.10   per day        Subtotal of Per Diem Interest:    $    567.70

**IMPOUNDS/ESCROWS:**

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement.

| | | | |
|---|---|---|---|
| _____ | _____ month(s) at $ _____ | per month = $ _____ |
| _____ | _____ month(s) at $ _____ | per month = $ _____ |
| _____ | _____ month(s) at $ _____ | per month = $ _____ |
| _____ | _____ month(s) at $ _____ | per month = $ _____ |
| _____ | _____ month(s) at $ _____ | per month = $ _____ |

Aggregate Escrow Adjustment:  $ _____.00

Impound Subtotal:        $ _____.00
Mortgage Ins. Premium:   $ _____
**TOTAL OF FEES AND COSTS:**    $    9,525.65

**HUD-1 SETTLEMENT STATEMENT:**

The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement to NOVASTAR HOME MORTGAGE, INC.
Attention: Quality Assurance. Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: 888 West Big Beaver Rd. Suite 1100, Troy, Michigan 48084

**ADDITIONAL INFORMATION: BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.**

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to: NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100, Troy, Michigan 48084
If you have any questions regarding any of these instructions, please contact ALEX VLACHOS
at (800) 264-4549

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

Borrower CHRISTOPHER KUBIAK        Date 05/20/05        Borrower SEBASTIEN GANGES        Date 05/20/05

Borrower        Date        Borrower        Date

Borrower        Date        Borrower        Date

**ACKNOWLEDGED AND AGREED:**

Settlement Agent        Date 5-20-05
CLOSING DANITA LEWIS

SPECIFIC CLOSING INSTRUCTIONS
03/25/05        Page 2 of 2        DocMagic ©forms  800-649-1362
                                    www.docmagic.com

NS00022

# EXHIBIT K

| A. Settlement Statement | U.S. Department of Housing and Urban Development | | |
|---|---|---|---|

OMB No. 2502-0265

| B. TYPE OF LOAN | | | |
|---|---|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☑ Conv. Unins. | 6. File Number 05LA04779 | 7. Loan Number 05-638465 | 8. Mortgage Insurance Case Number Not Applicable |
| 4. ☐ VA   5. ☐ Conv. Ins. | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals. "Adjustments for items Unpaid By Seller" are based on estimated amounts, and are subject to adjustment by Borrower(s) and Seller(s) when actual amounts become available.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Sebastien Sanges and Christophe Kublak 2751 79 Avenue Oakland, CA 94605 | | NovaStar Home Mortgage 11550 NEWCASTLE AVE STE 200 BATON ROUGE, LA 70816-2251 |

| G. Property Location | H. Settlement Agent | | |
|---|---|---|---|
| 2751 79 Avenue Oakland, CA 94605 Alameda County | Nations Title Agency Of Louisiana, Inc | | |
| | Place of Settlement | | I. Settlement Date 5/20/05 |
| Final HUD 1 | 13348 Coursey Blvd Baton Rouge, LA 70816 | | Disbursement Date 5/25/05 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. | | 402. | |
| 103. Settlement charges to borrower (line 1400) | 24,699.64 | 403. | |
| 104. Payoff to HomEq Servicing | 248,731.91 | 404. | |
| 105. Payoff to HomEq Servicing | 63,482.11 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 336,913.66 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Deposit or earnest money | |
| 202. Principal amount of new loan(s) | 361,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of 1st mtg loan | |
| 205. | | 505. Payoff of 2nd mtg loan | |
| 206. | | 506. Payoff of 3rd mtg loan | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. | | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 361,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 336,913.66 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 361,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash       To Borrower | 24,086.34 | 603. Cash       To Seller | 0.00 |

Final HUD 1

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION WILL BE IMPOSED ON YOU IF THIS ITEM IS REQUIRED TO BE REPORTED AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.

HUD-1 (3-86)

NS00023

| L.   Settlement Charges | | POC | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $ | | | | |
| 701. $ | | | | |
| 702. $ | | | | |
| 703. $ | | | | |
| 704. Commission paid at settlement | | | | |
| 800. Items Payable in Connection With Loan | | | | |
| 801. Loan Origination Fee  %        to NovaStar Home Mortgage | | | | |
| 802. Loan Discount   % | | | 5,415.00 | |
| 803. Processing to NovaStar Home Mortgage | | | | |
| 804. Administration to NovaStar Home Mortgage | | | 495.00 | |
| 805. Tax Service (First American Real Estate) to NovaStar Home Mortgage | | | 495.00 | |
| 806. Flood Cert. (Nationwide Totalflood Ser) to NovaStar Home Mortgage | | | 60.00 | |
| 807. MERS Fee (MERS) to NovaStar Home Mortgage | | | 7.00 | |
| 808. Underwriting to NovaStar Home Mortgage | | | 3.95 | |
| 809. | | | 595.00 | |
| 810. | | | | |
| 811. | | | | |
| 900. Items Required By Lender To Be Paid in Advance | | | | |
| 901. Interest  from 5/25/05 to 6/1/05  @ 81.1 /day | | | | |
| 902. Mortgage Insurance Premium for        months to | | | 567.70 | |
| 903. Hazard Insurance Premium for        months to | | | | |
| 904. Flood Insurance Premium for        months to | | | | |
| 905.        months to | | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard Insurance        months @ $        per month | | | | |
| 1002. Mortgage Insurance        months @ $        per month | | | | |
| 1003. Flood Insurance        months @ $        per month | | | | |
| 1004. City Taxes        months @ $        per month | | | | |
| 1005. County Taxes        months @ $        per month | | | | |
| 1006. Condo H/A Dues        months @ $        per month | | | | |
| 1007. Special Assessments        months @ $        per month | | | | |
| 1008. Aggregate Adjustment Amount        months @ $        per month | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or Closing Fee to Nations Title Agency Of Louisiana, Inc | | | | |
| 1102. Abstract or Title Search to Nations Title Agency Of Louisiana, Inc | | | 200.00 | |
| 1103. Title Examination to Nations Title Agency Of Louisiana, Inc | | | 300.00 | |
| 1104. Endorsement to Nations Title Agency Of Louisiana, Inc | | | 250.00 | |
| 1105. | | | 50.00 | |
| 1106. | | | | |
| 1107. | | | | |
| 1108. Title Insurance to Nations Title Agency Of Louisiana, Inc | | | | |
| 1109. Lender's Coverage: $  361,000.00        FEE:  943.00 | | | 943.00 | |
| 1110. Owner's Coverage: $        FEE: | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fees:        Deed:        Mortgage: 90.00        Release: 81.00 | | | | |
| 1202. City/County/stamps:        Deed:        Mortgage: | | | 171.00 | |
| 1203. State tax/stamps:        Deed:        Mortgage: | | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Payoff to Green Tree Servicing LLC | | | | |
| 1302. 2004 Supplemental Taxes - 1st Half to Alameda County | | | 14,421.01 | |
| 1303. 2004 Supplemental Taxes - 2nd Half to Alameda County | | | 357.99 | |
| 1304. | | | 367.99 | |
| 1305. | | | | |
| 1306. | | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | 24,699.64 | |

*Final HUD 1* (handwritten annotations appear at lines 1104 and below signature)

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Sebastien Sanges

Christophe Kubiak        *Final HUD 1*

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Nations Title Agency Of Louisiana, Inc        5/20/05
        Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

File #:  05LA04779

# ADDENDUM TO HUD-1

Loan Number: 05-638465

File Number:

Borrower: CHRISTOPHER KUBIAK, SEBASTIEN SANGES

| | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1100. ADDITIONAL TITLE CHARGES | | |
| 1114. ENDORSEMENTS  to: Service Provider | 50.00 | |
| 1115. RECORDING  to: Service Provider | 144.00 | |

Final HUD 1

Signature CHRISTOPHER  KUBIAK            05/20/05
Date

Signature SEBASTIEN  SANGES            05/20/05
Date

Signature _____  Date

Signature _____  Date

Signature _____  Date

Signature _____  Date

ADDENDUM TO HUD-1
05/10/04                    Page 1

DocMagic *Porma* 800-649-1362
www.docmagic.com

NS00025

# CERTIFICATION ADDENDUM TO
## HUD-1 SETTLEMENT STATEMENT

Loan Number: 05-638465

Property Address: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

I have carefully reviewed the HUD-1 settlement statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

| | |
|---|---|
| _CHRISTOPHER KUBIAK_ Borrower | _____ Seller |
| _SEBASTIEN SANGES_ Borrower | _____ Seller |
| _____ Borrower | _____ Seller |
| _____ Borrower | _____ Seller |
| _____ Borrower | _____ Seller |
| _____ Borrower | _____ Seller |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____    5-20-05
Settlement Agent          Date          Final HUD
CLOSING SAMITA LEWIS

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

CERTIFICATION ADDENDUM TO HUD-1 SETTLEMENT STATEMENT
HUD-1 CERT. 6/86

DocMagic *electronic* 800-649-1362
www.docmagic.com

NS00026

# EXHIBIT
# L

Certified True Copy

MIN: 100336090045774548          Loan Number: 05-638465

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 20, 2005                    Oakland                    CALIFORNIA
   [Date]                            [City]                          [State]

2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $361,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is NOVASTAR HOME MORTGAGE, INC., A DELAWARE CORPORATION
.I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.200 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on JULY 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. BOX 808911, KANSAS CITY, MISSOURI 64184--8911
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,699.39 . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 1 of 5

Form 3520 1/01
*DocMagic*&#8482;*** 800-649-1362*
*www.docmagic.com*

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the 1st  day of JUNE, 2007                        , and on that day every   6th   month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 300/1000          percentage points (   6.300  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.200 % or less than   8.200 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000          percentage point(s) (   1.000   %) from the rate of interest I have been paying for the preceding  6    months.  My interest rate will never be greater than   15.200 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
DocMagic *€€ærms* 800-649-1362
www.docmagic.com

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 3 of 5

Form 3520 1/01
DocMagic *eFerms* 800-649-1362
www.docmagic.com

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT    Page 4 of 5

Form 3520 1/01
*DocMagic* ℰℱℴℛ𝓂𝓈 800-649-1362
*www.docmagic.com*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CHRISTOPHER  KUBIAK          -Borrower

_____ (Seal)
SEBASTIEN  SANOES            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 5 of 5

Form 3520 1/01
DocMagic *€Fermaa* 800-649-1362
*www.docmagic.com*

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 05-638465

Date: MAY 20, 2005

Borrower(s): CHRISTOPHER KUBIAK, SEBASTIEN SANGES

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 20th day of MAY, 2005 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of NOVASTAR HOME MORTGAGE, INC., A DELAWARE CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____  05/20/05        _____  05/20/05
Borrower CHRISTOPHER KUBIAK    Date        Borrower SEBASTIEN SANGES    Date


_____  _____        _____  _____
Borrower                    Date        Borrower                    Date


_____  _____        _____  _____
Borrower                    Date        Borrower                    Date

# EXHIBIT M

Certified True Copy

Recording Requested By:
NOVASTAR HOME MORTGAGE, INC.


And After Recording Return To:
NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084
Loan Number: 05-638465

05LA04779 ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

MIN: 100336090045774548

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  MAY 20, 2005                      , together with all Riders to this document.
(B)  "Borrower" is CHRISTOPHER KUBIAK, A SINGLE MAN AND SEBASTIEN SANGES, A SINGLE MAN,  AS JOINT TENANTS.


Borrower is the trustor under this Security Instrument.
(C)  "Lender" is NOVASTAR HOME MORTGAGE, INC.

Lender is a CORPORATION                                                          organized
and existing under the laws of  DELAWARE
Lender's address is 888 West Big Beaver Rd. Suite 1100, Troy, Michigan 48084

(D)  "Trustee" is XXXXXXXX CALIFORNIA RECONVEYANCE COMPANY
XXXXXXXXXXXXXXXXX.

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note"  means the promissory note signed by Borrower and dated MAY 20, 2005
The Note states that Borrower owes Lender THREE HUNDRED SIXTY-ONE THOUSAND AND 00/100                               Dollars (U.S. $ 361,000.00          ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic ⊘Rorms 800-649-1362
Form 3005 01/01                                    Page 1 of 14                                    www.docmagic.com

NS00034

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JUNE 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider   ☒ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider         PREPAYMENT RIDER;
                                                                 LEGAL DESCRIPTION/EX-
                                                                 HIBIT "A"

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of                    ALAMEDA
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic ℰℱⓇ☎ 800-649-1362
Form 3005 01/01                          Page 2 of 14                          www.docmagic.com

NS00035

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
(STATE: CALIFORNIA, COUNTY: ALAMEDA).

which currently has the address of   2751 79TH AVENUE

[Street]

OAKLAND                           , California   94605        ("Property Address"):

[City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

NS00036

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 5 of 14                       DocMagic eFormns 800-649-1362
                                                                                              www.docmagic.com

NS00038

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

NS00039

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

NS00040

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

NS00041

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

NS00042

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

NS00043

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

NS00044

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 12 of 14            DocMagic €Forms 800-649-1362
                                                                                www.docmagic.com

NS00045

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHRISTOPHER KUBIAK                    -Borrower

_____ (Seal)
SEBASTIEN SANGES                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

Witness:                             Witness:

_____            _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                        Page 13 of 14

DocMagic *eFerms* 800-649-1362
www.docmagic.com

NS00046

State of California          )
                             ) ss.
County of  ALAMEDA           )

On  MAY 20, 2005  before me,   HARRIS PERLES, NOTARY PUBLIC

personally appeared  CHRISTOPHER  KUBIAK, SEBASTIEN  SANGES

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY SIGNATURE

HARRIS PERLES, NOTARY PUBLIC
_____
(Typed Name of Notary)

NOTARY SEAL

HARRIS PERLES
Commission # 1462974
Notary Public - California
Alameda County
My Comm. Expires Feb 11, 2008

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                Page 14 of 14        DocMagic ℯℱℴ𝓇𝓂𝓈 800-649-1362
                                                          www.docmagic.com

NS00047

05LA04779

# LEGAL DESCRIPTION

## EXHIBIT "A"

Beginning at a point on the Northwestern line of 79th Avenue, distant thereon Northeasterly 451.32 feet from the point of intersection thereof with the Northeastern line of Hillside Street; thence Southwesterly, along said line of 79th Avenue 37 feet; thence at right angles Northwesterly 142.91 feet; thence North 57 Degrees 54 Minutes Easter 37 feet; thence South 32 Degrees 56 Minutes 30 Seconds East 142.37 feet to the point of beginning.

Municipal Address Provided for information only:
2751 79 Avenue
Oakland, CA  94605

NS00048

MIN: 100336090045774548                Loan Number: 05-638465

## ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th day of MAY, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to NOVASTAR HOME MORTGAGE, INC., A
DELAWARE CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    8.200 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A)    Change Dates
The interest rate I will pay may change on the 1st   day of JUNE, 2007
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."
   (B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 1 of 3

*DocMagic eRunner* 800-649-1362
www.docmagic.com

NS00049

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 300/1000 percentage points (    6.300   %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.200   % or less than   8.200   %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points (    1.000   %) from the rate of interest I have been paying for the preceding     6     months.  My interest rate will never be greater than 15.200 %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                      Page 2 of 3

DocMagic ℰℱ𝓸𝓻𝓶𝓼 800-649-1362
www.docmagic.com

NS00050

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
CHRISTOPHER  KUBIAK    -Borrower          SEBASTIEN  SANGES     -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

NS00051

# ESCROW WAIVER

Loan Number: 05-638465

Lender: NOVASTAR HOME MORTGAGE, INC.

Borrower: CHRISTOPHER KUBIAK, SEBASTIEN SANGES

Property: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

NOVASTAR HOME MORTGAGE, INC.                                              ("Lender")
hereby waives its normal requirement providing for the escrow of, among other things, and to the extent applicable,
taxes, insurance, ground rents and assessments.

Borrower hereby agrees to pay these items promptly when due and to provide receipts to Lender upon request as proof
of payment. Failure to pay such items when due or to make mortgage payments as agreed shall give Lender the right
to reinstate the requirement that these items be paid to Lender to be placed in escrow and paid monthly for the
remaining term of the loan.

Borrower hereby acknowledges and understands that the consequences of not establishing an escrow account may
include, without limitation, the following:

(1)   Borrower may incur fees associated with this escrow waiver;

(2)   Borrower is responsible for personally and directly paying the non-escrowed items in addition to paying
      the mortgage loan payment; and

(3)   If Borrower fails to pay non-escrowed items, Lender may obtain the required insurance on Borrower's
      behalf at a potentially higher cost (which may include any potential commission payments to the
      Lender), and/or there could be reduced coverage for Borrower of the insurance Lender obtains.

The undersigned hereby agrees to these terms and conditions.

Borrower CHRISTOPHER  KUBIAK        Date          Borrower SEBASTIEN  SANGES         05/29/05   Date

Borrower                            Date          Borrower                           Date

Borrower                            Date          Borrower                           Date

ESCROW WAIVER
12/20/04

DocMagic *Forms* 800-649-1362
www.docmagic.com

NS00052

# PREPAYMENT RIDER

Loan Number: 05-638465

Date: MAY 20, 2005

Borrower(s): CHRISTOPHER KUBIAK, SEBASTIEN SANGES

THIS PREPAYMENT RIDER (the "Rider") is made this 20th day of MAY 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of NOVASTAR HOME MORTGAGE, INC.

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.     PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

5     . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
6/03                                Page 1 of 2

*DocMagic* ✪Forms 800-649-1362
www.docmagic.com

NS00053

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
CHRISTOPHER  KUBIAK         -Borrower

_____ (Seal)
SEBASTIEN  SANGES          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
6/03                          Page 2 of 2

DocMagic EZForms 800-649-1362
www.docmagic.com

NS00054

# EXHIBIT N

# NOTICE OF RIGHT TO CANCEL

Loan Number: 05-638465

Borrowers: CHRISTOPHER KUBIAK, SEBASTIEN SANGES

Property Address: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

---

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is MAY 20, 2005                    ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of MAY 24, 2005 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____      _____
Consumer's Signature                         Date
SEBASTIEN    SANGES

---

ACKNOWLEDGMENT OF RECEIPT

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_____      05/20/05
SEBASTIEN    SANGES                          /Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
05/06/05

DocMagic eForms 800-649-1362
www.docmagic.com

NS00055

# EXHIBIT

# O

## NOTICE OF RIGHT TO CANCEL

Loan Number: 05-638465

Borrowers: CHRISTOPHER KUBIAK, SEBASTIEN SANGES

Property Address: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

---

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is MAY 20, 2005                    ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of MAY 24, 2005 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

| | |
|---|---|
| Consumer's Signature | Date |
| CHRISTOPHER KUBIAK | |

---

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

CHRISTOPHER KUBIAK                    Date   05/20/05

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
05/06/05

DocMagic eForms 800-649-1362
www.docmagic.com

NS00056

# EXHIBIT
# P

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 05-638465
Creditor: NOVASTAR HOME MORTGAGE, INC.
Address: 888 West Big Beaver Rd. Suite 1100, Troy, MICHIGAN 48084          Date: MAY 20, 2005

Borrower(s): CHRISTOPHER KUBIAK, SEBASTIEN SANGES

Address: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605
Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.678 % | $ 749,075.72 | $ 353,161.35 | $ 1,102,237.07 |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment** | When Payments Are Due | Number of Payments | Amount of Payment** | When Payments Are Due | Number of Payments | Amount of Payment** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 24 | 2,699.39 | 07/01/05 | | | | | | |
| 335 | 3,087.63 | 07/01/07 | | | | | | |
| 1 | 3,095.66 | 06/01/35 | | | | | | |

___ DEMAND FEATURE: This obligation has a demand feature.

_X_ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability     _X_ Property Insurance     _____ Flood Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.     _____ Private Mortgage Insurance
SECURITY: You are giving us a security interest in: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605
_____ The goods or property being purchased     _X_ Real property you already own.
FILING FEES: $
LATE CHARGE: If payment is more than ___15___ days late, you will be charged ___5.000___ % of the payment.
PREPAYMENT: If you pay off early, you
_X_ may     _____ will not     have to pay a penalty.
_____ may     _X_ will not     be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may     _____ may, subject to conditions     _X_ may not     assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
"e" means an estimate     _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

Applicant CHRISTOPHER KUBIAK     05/20/05 Date          (Applicant) SEBASTIEN SANGES     05/20/05 Date

(Applicant) _____ Date          (Applicant) _____ Date

(Applicant) _____ Date          (Applicant) _____ Date

NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

NS00057

Lender: NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084
Re: CHRISTOPHER KUBIAK, SEBASTIEN SANGES
2751 79TH AVENUE
OAKLAND, CALIFORNIA 94605

Date: MAY 20, 2005
Loan Number: 05-638465

## ITEMIZATION OF AMOUNT FINANCED

| Ref HUD-1 Statement | | |
|---|---|---|
| | ± Amount given to you directly | $ |
| 1001 1004 | ± Amount paid on your account | |
| | Insurance Reserves | |
| | Tax Reserves | |
| 1009 | Other Reserves | |
| | Aggregate Adjustment | |
| 803 804 903 809 1106 1108 1201 | ± Amount paid to others on your behalf: | 0.00 |
| | Appraisal Fee | |
| | Credit Reporting Fee | |
| | Hazard Insurance Premium | |
| | Document Preparation Fee | |
| | Notary Fee | |
| | Title Ins. Premium  to: Service Provider | |
| | Recording Fee | 943.00 |
| | TITLE SEARCH  to: Service Provider | |
| | TITLE EXAM  to: Service Provider | 300.00 |
| | ENDORSEMENTS  to: Service Provider | 250.00 |
| | RECORDING  to: Service Provider | 50.00 |
| | | 144.00 |
| | Loan Proceeds to: | $351,474.35 |
| | ± AMOUNT FINANCED | $ 353,161.35 |
| | ± Prepaid Finance Charge | $ 7,838.65 |

| Ref HUD-1 | ± Itemization of Prepaid Finance Charge: | | ± Loan Amount $ 361,000.00 |
|---|---|---|---|
| 801 | Loan Origination Fee to: NOVASTAR HOME | | |
| 802 | Loan Discount Fee | 5,415.00 | |
| 806 | Tax Service Fee to: NOVASTAR HOME MORTGAGE, | | |
| | Prepaid Interest ( 7       days) | 60.00 | |
| 901 | @       8.200  % per annum | | |
| 902 | Mtge. Ins. Premium | 567.70 | |
| 1002 | Mtge. Ins. Reserves | | |
| 808 | Origination Fee | | |
| | PROCESSING  to: NOVASTAR HOME MORTGAGE, | 495.00 | |
| | ADMINISTRATION  to: NOVASTAR HOME MORTGAGE, | 495.00 | |
| | SETTLEMENT  to: Service Provider | 200.00 | |
| | FLOOD CERT. NATIONWIDE TOTALFLOOD SER to: | 7.00 | |
| | MERS FEE MERS to: NOVASTAR HOME MORTGAGE, | 3.95 | |
| | UNDERWRITING  to: NOVASTAR HOME MORTGAGE, | 595.00 | |

This form does not cover all items you will be required to pay in cash at settlement, for example, deposits in escrow for real estate taxes and insurance may be different. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts to be settled.

☐ All disclosures are estimates

Total Prepaid Finance Charge                    $   7,838.65

The undersigned acknowledge receiving and reading a completed copy of this disclosure.

_____  08/20/05
(Borrower) CHRISTOPHER KUBIAK   (Date)

_____  05/20/05
(Borrower) SEBASTIEN SANGES   (Date)

_____
(Borrower)                    (Date)

_____
(Borrower)                    (Date)

_____
(Borrower)                    (Date)

_____
(Borrower)                    (Date)

GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES
08/19/03

DocMagic ©Disclosure  800-649-1362
www.docmagic.com

NS00058

# EXHIBIT Q

Loan Number: 05-638465

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

You are hereby notified* that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from NOVASTAR HOME MORTGAGE, INC.

to _____

_____, effective JULY 1, 2005

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before this effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, the present servicer and the new servicer have combined all necessary information in this one notice.

Your present servicer is NOVASTAR HOME MORTGAGE, INC.

If you have any questions relating to the transfer of servicing from your present servicer call our servicing department at (800) 264-4549 between 8:30 a.m. and 5:00 p.m. on the following days: Monday through Friday.

Your new servicer will be _____

The business address for your new servicer is: _____

The toll-free or collect call telephone number of your new servicer is _____

If you have any questions relating to the transfer of servicing to your new servicer call _____

_____ at _____ between _____ a.m. and _____ p.m. on the following days: Monday through Friday.

The date that your present servicer will stop accepting payments from you is JULY 1, 2005 .

The date that your new servicer will start accepting payments from you is JULY 1, 2005 .

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (12 U.S.C. §2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day, excluding legal public holidays (State or Federal), Saturday and Sunday.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

### BORROWER ACKNOWLEDGMENT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our loan signature(s) below.

Borrower CHRISTOPHER KUBIAK    Date 05/20/05        Borrower SEBASTIEN SANGES    Date 05/20/05

Borrower _____ Date _____    Borrower _____ Date _____

Borrower _____ Date _____    Borrower _____ Date _____

* This notification is a requirement of section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2605).

NS00073

# EXHIBIT

# R

NOVASTAR HOME MORTGAGE, INC.
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084

Loan Number: 05-638465

# LOAN SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 et seq.) you have certain rights under that Federal Law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## TRANSFER PRACTICES AND REQUIREMENTS

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect-call telephone number of the new servicer, and toll-free or collect-call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## COMPLAINT RESOLUTION

Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## DAMAGES AND COSTS

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## SERVICING TRANSFER ESTIMATED BY LENDER

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

   _____ We are able to service your loan and presently intend to do so.

   __XX__ We do not service mortgage loans and we presently intend to assign, sell, or transfer the servicing of your mortgage loan. You will be informed about your servicer.

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between: 76 - 100% This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of the mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED |
|------|--------------------------------|
| 2002 | 100.00% |
| 2003 | 100.00% |
| 2004 | 100.00% |

This information ☒ does ☐ does not include assignments, sales or transfers to affiliates or subsidiaries.

NOVASTAR HOME MORTGAGE, INC.

_____     MAY 20, 2005
Lender's Authorized Representative         Date

NS00078

## ACKNOWLEDGMENT OF MORTGAGE APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below.  I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____    05/20/05    _____    05/20/05
Applicant's Signature    Date    Applicant's Signature    Date
CHRISTOPHER  KUBIAK    SEBASTIEN  SANGES

_____    _____
Applicant's Signature    Date    Applicant's Signature    Date

_____    _____
Applicant's Signature    Date    Applicant's Signature    Date

NS00079

# EXHIBIT

# S

**NOVASTAR HOME MORTGAGE, INC.**
888 West Big Beaver Rd. Suite 1100
Troy, Michigan 48084
(800)264-4549

CHRISTOPHER   KUBIAK,  SEBASTIEN   SANGES        Loan Number: 05-638465
2751 79TH AVENUE
OAKLAND, CALIFORNIA 94605

RE: Transfer / Sale of Loan

Dear Borrower:

We thank you for the recent opportunity of assisting you in securing your real estate loan and look forward to serving your needs again in the future.

As a regular practice, most loans are sold in the secondary marketplace. This, however is no reflection on you nor your property and has no effect on your mortgage payments. Usually when a loan is sold, the servicing of your loan is also transferred. Because your loan has been sold along with its servicing, all future payments beginning with your _____
JULY 1, 2005_____ payment are to be sent to:

Your monthly payment amount has not changed and consists of:

| | |
|---|---|
| PRINCIPAL AND INTEREST | $ _2,699.39_ |
| MMI/PMI MONTHLY PREMIUM | _____ |
| RESERVE FOR PROPERTY TAXES | _____ |
| HAZARD INSURANCE RESERVE | _____ |
| FLOOD INSURANCE RESERVE | _____ |
| | _____ |
| | _____ |
| TOTAL MONTHLY PAYMENTS | $ _2,699.39_ |

information and/or coupons to you soon. In the event these coupons are delayed, please send your payment with the temporary payment coupon below directly to _____. will forward payment

payment on to _____. If a payment is in transit to us, we will forward your immediately.

Should you have further questions, please call _____ Loan Servicing Dept. at _____ or the undersigned for assistance. We thank you for your cooperation.

Yours Truly,

NOVASTAR HOME MORTGAGE, INC.

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### TEMPORARY PAYMENT COUPON

Loan Number 05-638465 ____ Due Date AUGUST 1, 2005 Payment Amount $2,699.39

Name CHRISTOPHER  KUBIAK, SEBASTIEN  SANGES

Address 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

Remit to:

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### TEMPORARY PAYMENT COUPON

Loan Number 05-638465 ____ Due Date JULY 1, 2005 Payment Amount $2,699.39

Name CHRISTOPHER  KUBIAK, SEBASTIEN  SANGES

Address 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

Remit to:

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

NS00080

# EXHIBIT T

Loan Number: 05-638465

# ARM PROGRAM DISCLOSURE

This disclosure describes the features of the adjustable-rate mortgage (ARM) program you are considering. Information on other ARM programs is available upon request.

## HOW YOUR INTEREST RATE AND PAYMENTS ARE DETERMINED

- Your interest rate will be based on an index plus a margin.
- Your payment will be based on the interest rate, loan balance, and loan term.
  - The interest rate will be based on: The Average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market (LIBOR), based on quotations of major banks, known as the six month libor index.
  (your index), plus our margin. Ask us for our current interest rate and margin.
- Information about the index rate can be found: Index values are published in the Money Rates section of the Wall Street Journal.
  ☒ Your initial interest rate is not based on the index used to make later adjustments. Ask us for the current amount of our adjustable-rate mortgage discounts or premiums.

## HOW YOUR INTEREST RATE CAN CHANGE

- Your interest rate will not change for the first  24  months of your loan.
- After the first  24  months, your interest rate can change every  6  months.
- Each date on which your interest rate can change is called a "Change Date" and will be described in your loan documents.
- On each Change Date, your interest rate will equal the index plus the margin, rounded  ☐ up  ☐ down ☒ up or down to the nearest  .125  %, unless your interest rate "caps" or "floors" (described below) limit the amount of change in the interest rate.
- Your interest rate cannot increase more than  7.00%  above the initial interest rate over the term of the loan.          percentage points
- Your interest rate cannot decrease more than  .000%  below the initial interest rate over the term of the loan.          percentage points
- On the first Change Date, your interest rate cannot increase more than  3.000%  percentage points above, or decrease more than  .000%  percentage points below the initial interest rate.          percentage
- On the second Change Date and every Change Date thereafter, your interest rate cannot increase or decrease more than  1.000%  percentage points.

## HOW YOUR PAYMENT CAN CHANGE

- Following the initial  24  months of your loan, your monthly payment can increase or decrease substantially every  6  months based on changes in the interest rate.
- Your new payment will be due beginning with the first payment due date after the Change Date on which the related interest rate change occurred, and will be your payment until the first payment due date after the next Change Date.
- For example, on a $10,000,  30 -year term loan with an initial interest rate of  8.200  % (based on the  3.480  % index value rate in effect on MAY,  2005 , plus a margin of  6.300  % and ☒ less a discount  ☐ plus a premium of  1.580  %, rounded as provided above), the maximum amount that the interest rate can rise under this program is  7.000  percentage points to  15.200  % and the monthly payment can rise from a first year payment of $74.78 . to a maximum of $125.94  in the 5th  year. To see what your monthly payments would be, divide your mortgage amount by $10,000; then multiply the monthly payment by the resulting amount.
  (For example, the monthly payment for a mortgage amount of $60,000 would be $60,000 divided by $10,000 = 6; 6 times $74.78  = $ 448.68  per month.)
- You will be notified in writing at least  25  days, but not more than 120 , days before the due date of a payment at a new level. This notice will contain information about the index and interest rates, payment amount, and loan balance.

## OTHER INFORMATION

- This obligation  ☐ does  ☒ does not have a demand feature.

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below.  THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.

| Applicant CHRISTOPHER  KUBIAK       Date  05/20/05 | Applicant SEBASTIEN  SANGES       Date  05/20/05 |
|---|---|
| Applicant                          Date | Applicant                          Date |
| Applicant                          Date | Applicant                          Date |

ARM PROGRAM DISCLOSURE

DocMagic ✸ 800-649-1362
www.docmagic.com

NS00088

# EXHIBIT U

Loan Number: 05-638465

## ACKNOWLEDGMENT OF RECEIPT OF GOOD FAITH ESTIMATE
## AND TRUTH IN LENDING ACT DISCLOSURES

Lender: NOVASTAR HOME MORTGAGE, INC.

Borrower(s): CHRISTOPHER KUBIAK, SEBASTIEN SANGES

Property Address: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

The undersigned ("you" or "your") hereby acknowledge receipt of a "good faith estimate" of the charges which you are likely to incur at the settlement of your loan as provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (12 U.S.C.A. 2601 et seq.), and all applicable disclosures required by the Truth in Lending Act, as amended (15 U.S.C.A. 1601 et seq.).

| | |
|---|---|
| Borrower CHRISTOPHER KUBIAK          Date | Borrower SEBASTIEN SANGES          05/20/05 Date |
| Borrower          Date | Borrower          Date |
| Borrower          Date | Borrower          Date |

CALIFORNIA ACKNOWLEDGMENT OF RECEIPT
12/01/01

DocMagic *Eforms* 800-649-1362
www.docmagic.com

NS00096

# EXHIBIT V

Loan Number: 05-638465

LENDER: NOVASTAR HOME MORTGAGE, INC.


BORROWER(S): CHRISTOPHER KUBIAK, SEBASTIEN SANGES


PROPERTY ADDRESS: 2751 79TH AVENUE, OAKLAND, CALIFORNIA 94605

## CONSUMER CAUTION AND HOME OWNERSHIP COUNSELING NOTICE

If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.

Mortgage loan rates and closing costs and fees vary based on many other factors, including your particular credit and financial circumstances, your earnings history, the loan-to-value requested, and the type of property that will secure your loan. Higher rates and fees may be justified depending on the individual circumstances of a particular consumer's application. You should shop around and compare loan rates and fees.

This particular loan may have a higher rate and total points and fees than other mortgage loans and is, or may be, subject to the additional disclosure and substantive protections under Division 1.6 (commencing with Section 4970 of the Financial Code. You should consider consulting a qualified independent credit counselor or other experienced financial advisor regarding the rate, fees, and provisions of this mortgage loan before you proceed. For information on contacting a qualified credit counselor, ask your lender or call the United States Department of Housing and Urban Development's counseling hotline at 1-888-466-3487 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm for a list of counselors.

You are not required to complete any loan agreement merely because you have received these disclosures or have signed a loan application.

If you proceed with this mortgage loan, you should also remember that you may face serious financial risks if you use this loan to pay off credit card debts and other debts in connection with this transaction and then subsequently incur significant new credit card charges or other debts. If you continue to accumulate debt after this loan is closed and then experience financial difficulties, you could lose your home and any equity you have in it if you do not meet your mortgage loan obligations.

Property taxes and homeowner's insurance are your responsibility. Not all lenders provide escrow services for these payments. You should ask your lender about these services.

Your payments on existing debts contribute to your credit ratings. You should not accept any advice to ignore your regular payments to your existing creditors.

CALIFORNIA CONSUMER CAUTION AND HOME OWNERSHIP COUNSELING NOTICE
06/01/02
Page 1 of 2

DocMagic ⌂Plus®™ 800-649-1362
www.docmagic.com

NS00097

By signing below, the undersigned hereby acknowledge(s) receipt of a copy of this notice.

Borrower  CHRISTOPHER   KUBIAK       Date 05/20/05        Borrower  SEBASTIEN   SANGES       Date 05/20/05

Borrower                          Date               Borrower                          Date

Borrower                          Date               Borrower                          Date

CALIFORNIA CONSUMER CAUTION AND HOME OWNERSHIP COUNSELING NOTICE
06/01/02
Page 2 of 2                                          DocMagic CACMD02  800-649-1262
                                                     www.docmagic.com

NS00098