1   Carter M. Zinn (State Bar No. 205034)
    LAW OFFICES OF CARTER M. ZINN
2   3450 Broderick Street, Suite 302
    San Francisco, CA 94123
3   Telephone: (415) 292-4100
    Facsimile: (415) 292-4106
    E-mail: carter@zinn-law.com
4
    John W. Phillips (Washington State Bar No. 12185)
    Matthew Geyman (Washington State Bar No. 17544)
5   PHILLIPS LAW GROUP, PLLC
    315 Fifth Avenue South, Suite 1000
6   Seattle, WA 98104
    Telephone: (206) 382-6163
7   Facsimile: (206) 382-6168
    E-mail: jphillips@jphillipslaw.com
8
    Ari Y. Brown (Washington State Bar No. 29570)
9   LAW OFFICE OF ARI BROWN
    1001 Fourth Avenue, Suite 3600
10  Seattle, WA 98154
    Telephone: (206) 623-5890
11  Facsimile: (206) 623-0965
    E-mail: ari@abrownlegal.com
12

    ATTORNEYS FOR PLAINTIFFS CHRISTOPHE KUBIAK AND SEBASTIAN SANGES

13

14              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| CHRISTOPHE KUBIAK, an individual; SEBASTIAN SANGES, an individual, on behalf of themselves and all others similarly situated, | Case No. C07-3438 VRW |
| | CLASS ACTION |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| NOVASTAR MORTGAGE INC., a Virginia corporation; NOVASTAR HOME MORTGAGE INC., a Delaware corporation; NOVASTAR FINANCIAL INC., a Maryland corporation, | |
| Defendants. | |

# TABLE OF AUTHORITIES
## Federal Cases

*Anderson v. Wells Fargo Home Mortgage, Inc.*, 259 F. Supp. 2d 1143 (W.D. Wash. 2003).........9

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)...............................................................5

*Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201 (9th Cir. 2003)......................................17

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ..........................................................................5
*Gilligan v. Jamco Devel. Corp.*, 108 F.3d 246 (9th Cir. 1997)......................................................5

*Hernandez v. Hilltop Financial Mortgage Inc.*, 2007 WL 3101250
   (N.D. Cal. Oct. 22, 2007) ...................................................................................17, 18

*In re Ameriquest Mortgage Co.*, No. 05-CV-7097, 2007 WL 1202544
   (N.D. Ill. Apr. 23, 2007) ..................................................................................17

*Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927
   (N.D. Cal. Aug. 10, 2005) ................................................................................17

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .....................................................5, 6, 7

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).........................................................5

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ..........................................................................4

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998).....................................................................6

*Pierce v. NovaStar Mortgage Inc.*, 2007 WL 836714 (W.D. Wash. March 15, 2007).............2, 13

*Pierce v. NovaStar Mortgage Inc.*, 2007 WL 951845 (W.D. Wash. March 27, 2007).....2, 3, 8, 11

*Pierce v. NovaStar Mortgage Inc.*, 238 F.R.D. 624 (W.D. Wash. 2007).......................................2

*Pierce v. NovaStar Mortgage Inc.*, 489 F. Supp. 2d 1206 (W.D. Wash. 2007) .....................passim

*Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353 (N.D. Cal. 2007) .......................................17

## California Cases

*Amen v. Merced County Title Co.*, 58 Cal.2d 528, 25 Cal. Rptr. 65, 375 P.2d 33 (1962) ............12

*Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. App. 2007)................17

*Bruckman v. Parliament Escrow Corp.*, 190 Cal.App.3d 1051, 235 Cal. Rptr. 813 (1987).........12

*Cel-Tech Communications, Inc. v .Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163,
   83 Cal. Rptr. 2d 548 (1999) ...................................................................................14

*Hodge v. Superior Court*, 145 Cal. App. 4th 278, 51 Cal. Rptr. 3d 519 (2006)............................14

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457,
   49 Cal. Rptr. 3d 227 (2006).................................................................14, 15, 17

*Washington Mutual Bank, FA v. Superior Court of Los Angeles County,*
   75 Cal. App. 4th 773, 89 Cal. Rptr. 2d 560 (1999) ...............................................14

**Federal Statutes**

12 U.S.C. § 2604(c).................................................................................................10
12 U.S.C. § 2607(a).................................................................................................16

**State Statutes**

Cal. Bus. & Prof. Code § 17200..............................................................................7, 14
Cal. Civ. Code § 1760.............................................................................................18
Cal. Civ. Code §1750..............................................................................................16
Cal. Fin. Code §50503(a)(2).....................................................................................13
Cal. Fin. Code 50500..............................................................................................15

**Federal Regulations**

24 C.F.R. § 3500.5(7)...............................................................................................9
24 CFR § 3500.7(b)................................................................................................12

## I.     INTRODUCTION

Plaintiffs' Complaint alleges that the NovaStar group of companies – defendants NovaStar Mortgage Inc. ("NMI"), its sister company NovaStar Home Mortgage Inc. ("NHMI") and their parent company, NovaStar Financial Inc. ("NFI") (collectively "NovaStar") – engage in a practice of deliberately hiding from borrowers NovaStar's premium payments to mortgage brokers in exchange for loans that carry a higher interest rate to the borrower.  Plaintiffs do not allege that these premium payments, known as yield spread premiums ("YSP"), payments outside of closing ("POC") or rebates (referred to herein as "premiums"), are inherently unlawful and are always used for wrongful purposes.  They claim only that these payments need to be adequately disclosed to borrowers and that NovaStar employs unlawful strategies to avoid doing so.  Those strategies violate the federal Real Estate Settlement Procedures Act ("RESPA") and its regulations, as incorporated into California law by the California Residential Mortgage Lending Act ("CRMLA") and are unlawful, unfair and deceptive under the California Unfair Competition Law ("UCL"), the False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

NovaStar's motion is grounded on its claim that NMI did not pay NHMI any premium for plaintiffs' loan, that the documents it has selected to present to the Court prove it was not paid any premium, and that plaintiffs' allegation that NHMI was paid a premium is erroneous speculation that cannot survive a motion to dismiss.  To the contrary, plaintiffs' Complaint is not based on speculation, but on two years of litigation against NMI in the United States District Court for the Western District of Washington in which the plaintiffs there uncovered the details of NovaStar's various strategies to hide disclosure of premium payments to brokers.  In that case, *Pierce v. NovaStar Mortgage Inc.*, United States District Court, Western District of Washington at Tacoma, Cause No. C-05-5835-RJB (hereafter "*Pierce*"), the plaintiffs there showed that NMI used NHMI to serve as a nominal lender for the purpose of avoiding disclosure of premiums NMI paid to NHMI.  Plaintiffs in that case also discovered that where NHMI "acted" as the

lender, NMI was intended to be the ultimate lender from the outset, that NMI paid a premium to NHMI, which operated in precisely the same fashion and with the same result as any other YSP to a mortgage broker, and that because NMI was financially responsible for NHMI's loan from the outset, NMI's premium payment to NHMI in acquiring the loan was not a secondary market transaction exempt from RESPA's disclosure requirements. Here, plaintiffs claim that NHMI served this precise role with respect to their loan and that NMI paid NHMI a premium that likewise increased plaintiffs' interest rate. *See, e.g., Pierce v. NovaStar Mortgage Inc.*, 489 F. Supp. 2d 1206 (W.D. Wash. 2007) (granting in part plaintiffs' motion for summary judgment); *Pierce v. NovaStar Mortgage Inc.*, 2007 WL 951845 (W.D. Wash. March 27, 2007) (denying defendant NovaStar's motion for summary judgment); *Pierce v. NovaStar Mortgage Inc.*, 238 F.R.D. 624 (W.D. Wash. 2007) (granting plaintiffs' motion for class certification); *Pierce v. NovaStar Mortgage Inc.*, 2007 WL 836714 (W.D. Wash. March 15, 2007) (granting in part plaintiffs' motion for partial summary judgment).

Before NovaStar brought this motion, plaintiffs asked it to produce the transactional documents between NMI and NHMI that would show NMI's premium payment, just as those documents showed the premium payments with respect to hundreds of loans in *Pierce*. NovaStar declined to produce those documents, and instead hand-picked and mischaracterized documents from plaintiffs' loan file in the hope of persuading this Court – on a motion to dismiss – that plaintiffs have no claim.[1] As discussed below, NovaStar's argument to this Court reflects the same kind of deception by omission and misdirection that it has perpetrated against plaintiffs as alleged in the Complaint. This Court should reject each of NovaStar's arguments.

---

[1] In advance of filing its motion, NovaStar's counsel sent plaintiffs' counsel copies of the documents it has asked the Court to review and asked plaintiffs to withdraw their Complaint. Plaintiffs' counsel advised NovaStar's counsel that the documents (attached to the declaration of Julia Connely, Dkt. 19-2) would not show that NMI paid NHMI a premium that served to inflate the interest rate on the loan, but that other documents – namely NMI's computer screens regarding the loan (documents that NovaStar refers to as "Novalinq screens"), the broker demand, purchase commitment, lock-in confirmation, final loan detail, and purchase worksheet – would. *See* Declaration of Ari Brown (Nov. 15, 2007), Ex. A. These were the same documents that led the court in *Pierce* to hold that NMI's payment of a premium to NHMI as "lender" were subject to RESPA's disclosure requirements. *See Pierce v. NovaStar*, 489 F. Supp. 2d at 1209. NovaStar did not provide these requested documents to plaintiffs, but instead filed this motion.

First, NovaStar claims that it had no obligation to disclose NMI's premium payment to NHMI, because NHMI was not a broker but a "lender" on plaintiffs' loan. RESPA requires disclosure of a lender's premium payment to a broker but not to another lender from whom NMI acquires the loan. Motion at 7. The United States District Court in *Pierce* – with the benefit of a full evidentiary record – held that NMI was not exempt from RESPA's disclosure requirements in precisely this context. There, the Court held that NMI was primarily financially responsible for the loans issued by NHMI from the outset and that NMI's premium payment to NHMI was thus subject to RESPA's disclosure requirements. *Pierce v. NovaStar*, 489 F. Supp. 2d at 1214.

Next, NovaStar claims that even if RESPA required it to disclose the premium NMI paid NHMI, it fulfilled that requirement by including a useless and uninformative reference in the Good Faith Estimate ("GFE") that gave plaintiffs no clue whether a premium would be paid. The court in *Pierce* rejected NovaStar's contention that this same "disclosure" was adequate under RESPA. *Pierce v. NovaStar*, 2007 WL 951845 at \*3. Moreover, plaintiffs' closing statement that NovaStar has placed before this Court is absolutely silent regarding NMI's premium payment, and thus facially violates RESPA's disclosure requirements.

NovaStar next argues that plaintiffs' alleged damages are non-existent or conjectural based on NovaStar's false assertion that NMI did not pay NHMI a premium on plaintiffs' loan. Plaintiffs have alleged – and will prove once NovaStar is required to produce the relevant loan documents – that NMI paid NHMI a premium that increased the interest rate on plaintiffs' loan. Just as the plaintiffs did in *Pierce*, plaintiffs here will show that they were entitled to a lower interest rate based on NMI's own rate sheets that demonstrate that plaintiffs' damages are both predictable and certain. Indeed, NovaStar appears to concede the predictability of damages if plaintiffs prove that NMI paid NHMI a premium. *See* Motion at 2, lines 13-15.

NovaStar also argues that plaintiffs have no claim against NMI or NFI, the parent company, because plaintiffs obtained their loan from NHMI. The court in *Pierce*, based on a full evidentiary record, held that NMI was responsible for the disclosure of its premium payments to NHMI, and NovaStar's claim that the broker or settlement agent, but not the lender, has the

disclosure obligation under RESPA, simply misstates the law.  Indeed, in *Pierce*, NMI was the *only* defendant.  With respect to NFI, NovaStar admits that NFI owns more than 10% of the stock in both NMI and NHMI.  It argues only that NFI did not "knowingly or recklessly" participate in hiding NMI's premium payment to NHMI.  This argument is obviously not an appropriate subject for a motion to dismiss, and in due course, plaintiffs will show that the officers of NFI were also the officers of NHMI and NMI and that they knowingly participated in the policies that gave rise to the hidden premium payments at issue in this case.

Finally, NovaStar claims that plaintiffs have failed to allege valid claims under the California Business and Professions Code § 17200 ( "UCL"), §17500 ( "FAL") or the Consumer Legal Remedies Act ("CLRA").  NovaStar's argument regarding the UCL and FAL is based on a repetition of its erroneous claim that NMI did not pay a premium to NHMI because NHMI was the "lender."  Because, as the court in *Pierce* held, NMI was required under RESPA to disclose its premium payment to NHMI, NovaStar violated RESPA, and that violation of federal law is a predicate for holding NovaStar liable under the UCL, FAL and CLRA.  NovaStar additionally argues that it is not subject to a claim under the CLRA because the transaction at issue involved "extensions of credit," and not goods or services.  A number of courts, including several in this district, have rejected this argument, and NovaStar itself has described the premiums at issue here as payment for goods or services.  For all of these reasons, and as further detailed below, the Court should deny NovaStar's motion.

## II.    ARGUMENT

### A.    Standard of Review on a Motion to Dismiss.

When the legal sufficiency of a complaint's allegations is tested by motion under Rule 12(b)(6), the Court must "limit its review to the allegations of material facts set forth in the complaint, [read] in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, [the Court must] take to be true." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  "Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d

668, 688 (9th Cir. 2001). A claim "should not be dismissed 'unless it appears beyond all doubt that that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Devel. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997).

NovaStar suggests that the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), has overruled all prior law governing motions to dismiss and has established a new "*Twombly*" standard by which motions to dismiss must be evaluated. *See* Motion at 5-6. NovaStar's argument is hyperbole. Plaintiffs in *Twombly* brought a claim under the Sherman Act alleging that telephone companies conspired in restraint of trade. The complaint, however, failed to set forth any facts tending to show a conspiracy and agreement among defendants, but rested entirely on the allegation that the defendants engaged in "parallel conduct." *Id.*, 127 S.Ct at 1962. The Court upheld the dismissal because the plaintiffs had not "set forth a single fact in a context that suggest[ed] an agreement." *Id.* at 1968-69. The Supreme Court did not purport to change the essential pleading standards under the Federal Civil Rules. Plaintiffs in *Twombly* had simply failed to allege an essential element of an antitrust conspiracy – the existence of an agreement. While stating that plaintiffs could not rest on legal conclusions alone, the Court affirmed that "'[r]ule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Id.* at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827 (1989)), and that "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)). As discussed below, the Complaint here is not based on legal conclusions or speculation but on two years of litigation against NMI involving these same issues and the dispositive rulings of another federal court based on a rich evidentiary record.

Apparently aware of the facial validity of plaintiffs' Complaint, NovaStar has elected to insert selected documents from the loan file into the record. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994). Rule 12(b)(6) provides that when:

matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b)(6). NovaStar relies on an exception to this rule, that a court may consider "material which is properly submitted as part of the complaint." *Lee*, 250 F.3d at 688. If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998).

NovaStar abuses this exception in its motion. It submits to the Court only selected documents from the loan file that by design were intended not to disclose the transaction between NMI and NHMI. It *omits* the documents that – as was consistently shown in *Pierce* – disclose that NMI paid a premium to NHMI that increased the interest rate on plaintiffs' loan and demonstrate that NMI was financially responsible for the loan from the outset. *See also* page 3, footnote 1, *supra*.

Not only does NovaStar abuse the exception by culling only the documents that hide the true nature of the transaction, NovaStar goes beyond the documents in characterizing them without the benefit of any competent testimony to support NovaStar's characterization. For example, it asserts that its selected "loan documents [were] provided to plaintiffs" (Motion at 1), that "NHMI reviewed an array of possible loan scenarios with plaintiffs, preparing for them a total of four draft Uniform Residential Loan Applications" (*id.* at 3) and that plaintiffs "negotiated four different loan scenarios with NHMI." *Id.* at 7. Yet only one of the loan applications, and none of the disclosures that NovaStar has produced, was signed by plaintiffs. Ms. Connely, NovaStar's declarant, has no first-hand knowledge of plaintiffs' loan transaction and only attests that she located the documents in their loan file. NovaStar's selection of documents while withholding the requested documents that will prove plaintiffs' case along with its argumentative use of the documents without the benefit of competent sponsoring testimony, is entirely inappropriate on a motion to dismiss. In *Lee*, the Ninth Circuit reversed a district court's

dismissal, noting that the district court's decision to dismiss plaintiffs' federal claims was improperly "rooted in defendants' factual assertions." *Lee,* 250 F.3d at 688. NovaStar's Motion asks this Court to commit the same error.

**B.    The Court Should Assume the Truth of Plaintiffs' Factual Allegations.**

Plaintiffs allege that NovaStar deceives consumers into accepting mortgages with inflated interest rates. NovaStar accomplishes this by offering premiums to mortgage brokers who consummate loans at interest rates higher than NovaStar would itself lend to that particular consumer in the absence of NovaStar's premium payment. The higher the premium to the broker, the higher the interest rate to the borrower. Complaint, ¶¶ 2-3. NMI regularly makes rate sheets available to mortgage brokers. The rate sheets and corresponding internet pricing programs list the terms of the loans NMI is offering on a particular date. When a broker submits a loan to NMI on behalf of a borrower, NMI quotes an interest rate in writing that presumes a specific premium payment to the broker. The premium directly correlates with a higher interest rate to the borrower, *i.e.*, if NMI does not pay the premium, the rate sheet provides for a lower interest rate loan for the borrower. *Id.*, ¶ 11.

Plaintiffs allege that NHMI submitted plaintiffs' financial information to NMI and that NMI, in turn, quoted an interest rate for the loan that specified the amount of the premium that NMI would pay to NHMI. *Id.*, ¶ 19. According to the GFE given to plaintiffs, the costs and fees of the loan included an origination fee of $5,415 that constituted 1.5% of the loan amount but did not disclose that, in addition, NMI would pay a premium to NHMI; nor did it disclose the amount of that premium payment. Instead, it only stated "yield spread premium 0-3%." This line listed no charge – the dollar amount was left blank. The GFE had a column designated "POC" for which charges that were to be "paid outside closing" – such as a premium payment – must be listed. NHMI listed no amount to be paid under this column. *Id.* Plaintiffs alleged that NMI provided the underwriting, processing and administrative services regarding plaintiffs' loan and that the fees paid to NHMI for underwriting, processing and administration were for work actually performed by NMI. Plaintiffs further allege that NMI paid NHMI a premium on

plaintiffs' loan that caused the interest rate on plaintiffs' loan to be increased above the rate NMI would have otherwise extended to them. *Id.* ¶26. Plaintiffs' loan closed on May 20, 2005. At closing, the actual settlement charges totaled $8,975. Of this total, $5,415 was stated as being paid by plaintiffs to NHMI as an origination fee and an additional $1,585 was listed as being paid by plaintiffs to NHMI for fees designated as underwriting, processing, and administration fees. No premium payment was listed on plaintiffs' HUD-1 settlement statement. *Id.*, ¶¶ 21-24.

These factual allegations demonstrate a number of NovaStar's deceptive strategies to hide NMI's premium payment to NHMI, which increased the interest rate to plaintiffs.

First, plaintiffs' loan is an example of a transaction in which NovaStar designates NHMI as a "lender" in order to hide from the borrower NMI's premium payment to NHMI and thus its effect on the borrower's interest rate. In *Pierce*, after extensive discovery, the plaintiffs there showed that when NHMI plays the role of "lender," NMI is intended to service the loan from the outset and that NMI is – from the outset – primarily responsible for the loan and for the money used to fund the loan. The premium that NMI pays to NHMI increases the interest rate on the loan in precisely the same fashion that a YSP to a "broker" increases the interest rate. *Pierce*, 489 F.Supp.2d at 1214; *Pierce*, 2007 WL 951845 at *5. Second, NMI's disclosure of its premium payment by referring to a "0-3%" range is patently uninformative and inadequate. In *Pierce*, the plaintiffs established that NMI had a policy of disclosing its premium payment either not at all or as 0-3% even when it knew the precise amount of the premium payment it was making. Plaintiffs will establish the same thing here and demonstrate again that NovaStar's practice of disclosing premium payments by referring to a "0-3%" range, if it makes any disclosure at all, is a patently inadequate, deceptive and unlawful disclosure.

Finally, plaintiffs have alleged that NMI's failure to disclose its premium payment to NHMI harmed them because that non-disclosure deprived them of material information that they could have used to bargain for better loan terms and a lower interest rate from NovaStar or another lender. Complaint, ¶¶ 4, 16. Indeed, NovaStar appears to concede the direct correlation between its premium payments and higher interest rates on borrowers' loans. Motion at 2. The

result of NovaStar's unlawful conduct is that plaintiffs have paid, and continue to pay, more

interest than they would have had NMI not paid the hidden premium. *Id.*, ¶16.

## C.    NovaStar Violated Its Obligation Under RESPA to Disclose Its Premium Payment to NHMI.

The Department of Housing and Urban Development ("HUD") and the courts have

emphasized the need for lenders and brokers to disclose all compensation to the broker, including

the fact and amount of a premium early in the loan process in a Good Faith Estimate ("GFE") and

at closing in a HUD-1 closing statement. *See Anderson v. Wells Fargo Home Mortgage, Inc.*, 259

F. Supp. 2d 1143, 1146 (W.D. Wash. 2003); *Pierce v. NovaStar*, 489 F. Supp. 2d at 1214-15.

HUD has noted that such premiums, while sometimes legitimate, can be abused by lenders and

brokers:

> [I]n some cases less scrupulous brokers and lenders take advantage of the
> complexity of the settlement transaction and use yield spread premiums as a
> way to enhance the profitability of the mortgage transactions without
> offering the borrower lower up front fees.  In these cases, yield spread
> premiums serve to increase the borrower's interest rate and the broker's
> overall compensation, without lowering up front cash requirements for the
> borrower.

RESPA Statement of Policy 2001-1, 66 Fed. Reg. at 53,054.  NovaStar admits that disclosure of

a premium must be made in the GFE and in the closing statement.  Motion at 2.  It simply claims

that it had no obligation to disclose a premium because its payment to NHMI is exempt from

RESPA disclosure requirements and in that even if it were required to disclose its payment under

RESPA, it did so adequately. *Id.* at 7-9.  As discussed below, this Court should reject

NovaStar's arguments.

### 1.    NMI's Premium Payment to NHMI Was Subject to RESPA's Disclosure Requirements.

NovaStar relies on a RESPA regulation that exempts from premium disclosure a bona

fide transfer of a loan obligation in the secondary market.  24 C.F.R. § 3500.5(7).  NovaStar

contends that because NHMI was the "lender" for plaintiffs, its transfer of the loan to NMI, for

which NMI paid NHMI a premium, was a bona fide secondary market transaction and thus not

subject to RESPA's disclosure requirements. The United States District Court in *Pierce* – with the benefit of a full evidentiary record – held that NovaStar was not exempt from RESPA's disclosure requirements in precisely the context presented by plaintiffs' loan here. *See Pierce*, 489 F. Supp. 2d at 1214.

In *Pierce*, the court reviewed evidence that NMI and NHMI agreed that NMI would pay a premium to NHMI before the loan closed, that the premium served the same purpose as a YSP of increasing the loan interest rate, that NMI conducted the underwriting and serviced the loan, and that NMI was primarily responsible for the loan from the outset notwithstanding NHMI's designation as "lender." Based on that record, the court in *Pierce* held as a matter of law that despite NHMI's designation as a lender, NMI "did not acquire the loan in a bona fide secondary market transaction because NovaStar Home [NHMI] was not solely responsible for the line of credit used to fund the loan." *Pierce*, 489 F. Supp. 2d at 1214. In short, because the evidence here will show, as in *Pierce*, that NMI's premium payment to NHMI for plaintiffs' loan was not a bona fide secondary market transaction, NMI was required to disclose to plaintiffs its premium payment to NHMI and failed to do so.

### 2.    NMI's Alleged "Disclosure" of Its Premium Payment to NHMI Was Inadequate under RESPA.

NovaStar next claims that even if it were required to disclose its premium payment to NHMI, the statement in plaintiffs' GFE that the YSP would be "0-3%", followed by leaving blank the amount of such hypothetical YSP, is an adequate disclosure under RESPA. Motion at 7. NovaStar bases this assertion on the statement in 12 U.S.C. § 2604(c) that "[e]ach lender shall provide with the booklet [provided to borrowers within three days after the loan application] a good faith estimate of the amount *or range* of charges." Once again, the court in *Pierce*, with the benefit of a full evidentiary record, rejected this precise argument. In *Pierce*, the evidence disclosed that NovaStar implemented the policy of stating the premium as "0-3%" throughout the loan process – despite specific knowledge of the exact premium amount and even after the loan had closed. *See Pierce*, 489 F. Supp. 2d at 1209. The *Pierce* court denied NMI's motion for

summary judgment in which it claimed a 0-3% disclosure gave plaintiffs sufficient disclosure to shop for a different loan, holding that a jury could conclude that "plaintiffs' failure to comparison shop resulted from a lack of disclosure by the defendant." *Pierce*, 2007 WL 951845 at *3.

A GFE, or "good faith estimate," requires the lender to identify its premium with as much precision as it can. That is why HUD stated in its 1999 Policy Statement that "[t]he requirement that all fees be disclosed on the GFE is intended to assure that consumers are shown the full amount of compensation to brokers." RESPA Statement of Policy 1999-1, 64 Fed. Reg. 10086 (March 1, 1999) (emphasis added). HUD emphasized that "any fees charged in settlement transactions should be clearly disclosed so that the consumer can understand the nature and recipient of the payment [and that HUD] considers unclear and confusing disclosures to be contrary to the statute's and the regulation's purposes of making RESPA-covered transactions understandable to the consumer." *Id.* at 10086-87. Two years later, HUD reiterated the purpose of the GFE, and the need for clarity, stating that, "[a]t a minimum, all fees to the mortgage broker are to be clearly labeled and properly estimated on the GFE." RESPA Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,056 (Oct. 18, 2001). Despite these repeated directives, NovaStar employed strategies to avoid disclosure of its premium payments. A statement that the premium may range from "0-3%," *i.e.*, that there may or may not be a premium, does not meet this requirement of disclosing the "full amount of compensation to brokers."

In any event, the documents that NovaStar has submitted with its Motion plainly demonstrate that NovaStar failed to disclose its premium payment in plaintiffs' HUD-1 closing statement. *See* Dkt. 19-2, Declaration of Julia Connely, Ex. K. There, NovaStar failed to mention its premium at all, and NovaStar admits that such premiums – if subject to RESPA – must be disclosed in the GFE *and* the closing statement. Motion at 2-3. In short, if this Court concludes based on the evidentiary record – as the court did in *Pierce* – that NMI's premium payment to NHMI was required to be disclosed under RESPA, then, as a matter of law, NovaStar violated RESPA.

NovaStar's related argument that the settlement agent and not NMI was responsible for the accuracy of the closing statement is absurd. *See* Motion at 2-3 & 9. The settlement agent complies strictly with the instructions of the lender. An escrow or settlement agent that does not strictly follow the lender's instructions is liable to the lender for breach of contract. *Amen v. Merced County Title Co.*, 58 Cal.2d 528, 531-532, 25 Cal. Rptr. 65, 375 P.2d 33 (1962); *Bruckman v. Parliament Escrow Corp.*, 190 Cal.App.3d 1051, 1057-1058, 235 Cal. Rptr. 813 (1987). The lender – in this case NMI – remains at all times the principal who has responsibility for disclosing its premium payment in the HUD-1 closing statement. In *Pierce*, NMI never even tried to suggest to the court there that it was not responsible for accurately disclosing the premium on the HUD-1 closing statement.

### 3.    All of the NovaStar Entities Breached Their Disclosure Obligations to Plaintiffs.

NovaStar also argues that NHMI is the only proper party because it was the "lender" and that the Court should dismiss NMI and NFI. As alleged, however, and as was proven in *Pierce*, NMI was the true "lender" on plaintiffs' loan, and NMI did not purchase the NHMI loan in a bona fide secondary market transaction. *See* pages 10-11, *supra*. As such, NMI, the true lender, bore the ultimate disclosure obligation under RESPA. NovaStar's claim that even if NMI were the lender the disclosure obligation in the GFE was NHMI's, as the broker, simply misstates the law. Even where the broker makes the disclosure in the GFE, the lender remains responsible for its delivery.

> Mortgage broker to provide:  In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs … As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, *but the funding lender is responsible for ascertaining that the good faith estimate has been delivered.*

24 CFR § 3500.7(b) (emphasis added). Indeed, NMI was the *only* defendant in *Pierce* which the Court held responsible for the precise disclosure obligations at issue here. *Pierce*, 489 F. Supp.

2d at 1212; *Pierce*, 2007 WL 836714 at *5 (March 15, 2007).  NMI never even suggested otherwise in *Pierce.*

NovaStar also claims that NFI cannot be liable as a shareholder with a stake of 10% or more in NMI and NHMI (which NFI has since dissolved), because plaintiffs cannot allege that NFI "knowingly or recklessly ma[d]e or cause[d] to be made any misstatement or omission of a material fact, pertaining to a loan or loan servicing."  Motion at 8, quoting Cal. Fin. Code §50503(a)(2).  That is precisely what plaintiffs have alleged in this case, however.  Plaintiffs allege and will establish that NovaStar's practice of hiding the premiums it pays to brokers is the product of a deliberate company strategy and policy.  *See* Complaint ¶¶ 12, 15, 27, 67.  Again, these allegations are not speculation but well-grounded allegations based on the evidentiary record developed in *Pierce*.  For example, plaintiffs will prove here – as they did in *Pierce* – that the CEO of NFI is also the CEO of NMI and NHMI and he testified that it was – until recently – NMI's policy to provide a completely uninformative premium disclosure of 0-3% at every stage of the loan transaction – even when the precise amount of the premium was indisputably known.  Plaintiffs will show that because many of the directors and officers of NMI and NHMI are also interlocking directors and officers of NFI, NFI was fully aware of the company-wide strategies used to hide premium payments from borrowers.

### 4.    Plaintiffs Have Adequately Pled Their Injury and Damages.

NovaStar's argument that plaintiffs have not been damaged rests on its erroneous assertion that plaintiffs' loan did not involve any premium payment.  But plaintiffs have specifically alleged that their loan did involve a premium payment, and that documents that NovaStar has yet to produce will prove it – just as was the case in *Pierce*.  NMI's own rate sheets show that plaintiffs could have obtained a lower interest rate loan if NMI had not paid a premium to NHMI.  Complaint, ¶ 11.  Indeed, NovaStar concedes that if NMI did pay a premium, then the interest rate on the loan was higher as a result.  Motion at 2.  Plaintiffs' allegation of harm is more than adequate at this stage of the case, and NovaStar's speculation about what plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (C07-3438 VRW)

saw and negotiated, and what they knew and didn't know (Motion at 6-8) is wrong and has no traction in the context of a motion to dismiss.

**5.    NovaStar's Violation of RESPA's Disclosure Requirements Constitutes Violations of the California State Laws at Issue.[2]**

**a.    NovaStar's Violation of RESPA Constitutes Unlawful and Otherwise Deceptive Conduct under the UCL.**

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Its coverage is sweeping, embracing 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Cel-Tech Communications, Inc. v .Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 560 (1999) (citations omitted). The forbidden unlawful acts include anything that properly can be called a business practice or act that is "forbidden by law." A practice is "forbidden by law" if it "violates any law, civil or criminal, statutory or judicially made . . ., federal, state or local." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1474, 49 Cal. Rptr. 3d 227, 242 (2006) (holding that plaintiffs' allegations that lender violated RESPA and CRMLA adequately pleaded an unlawful business practice actionable under UCL, citing *Cel-Tech Communications* and other cases); *see also Hodge v. Superior Court*, 145 Cal. App. 4th 278, 283, 51 Cal. Rptr. 3d 519, 522 (2006) ("An 'unlawful' business practice [under the UCL] necessarily 'borrows' from other laws by making them independently actionable.").

Based on these authorities, NovaStar's violation of RESPA is the "unlawful conduct" supporting plaintiffs' UCL claim. California courts have affirmed that a violation of RESPA's disclosure requirements gives rise to a state law claim for unfair and deceptive business practices. *See McKell, supra*; *Washington Mutual Bank, FA v. Superior Court of Los Angeles County*, 75 Cal. App. 4th 773, 89 Cal. Rptr. 2d 560 (1999). NovaStar's violation of RESPA, as

---

[2] NovaStar correctly notes that the Complaint inadvertently reversed the remedies available under the CLRA with those available under the UCL and FAL by seeking monetary damages under the UCL and FAL rather than under the CLRA. Plaintiffs will correct this error, with leave of Court, by filing an amended complaint in which they seek damages under the CLRA and injunctive relief under the UCL and FAL.

discussed in the prior sections of this Response, constitutes the "unlawful" predicate act under federal law that forms the basis for plaintiffs' valid UCL claim. *See* pages 10-13, *supra*. Further, because RESPA is incorporated by the CRMLA, *see* Cal. Fin. Code 50500 *et seq.*, NovaStar's violation of RESPA is also violation of the CRMLA, is "forbidden by [state] law," and is thus an unlawful act under the UCL for this reason as well.

Moreover, in reversing the trial court's dismissal of the UCL claims, the *McKell* court emphasized the broad scope of the UCL and noted that the deceptive business practices that the statute prohibits may include statements that, while they:

> may be accurate on some level, . . . will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL. The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer.

*McKell*, 142 Cal.App.4th at 1471 (internal quotations and citations omitted).

While the *McKell* court found that the amounts the lender disclosed on the HUD-1 were accurate, the lender had nonetheless acted deceptively within the meaning of the UCL because a reasonable consumer likely would believe that the fees charged reflected the cost of the service to the lender. *Id.*, at 1472. By the same token, NovaStar's practice of listing premiums on the GFE as "0-3%" is deceptive under the UCL. Even if technically true, stating the amount of the premium as such a vague and uninformative range is deceptive and misleading under the UCL based on NovaStar's knowledge – at the time of the disclosure – that the premium would *not* be 0%, combined with NovaStar's failure to provide a good faith estimate of the *actual* amount of the premium based on the contemporaneous information readily available to NovaStar in its own files.

NovaStar's additional claim that it cannot have violated the UCL because plaintiffs got a better deal than the one disclosed in the GFEs also is incorrect. First, the GFE that NovaStar references (Connely Decl., Exs. E & F) are unsigned and there is no evidence that plaintiffs ever saw them. Even if they had seen it, the deal plaintiffs got would have been better – *i.e.*, at a

lower interest in the absence of the premium that NMI paid, and NMI's own rate sheets demonstrate that unequivocally.

### b.     NovaStar Also Violated the FAL and CLRA.

NovaStar suggests that California courts treat claims under the UCL, the FAL, and the CLRA that are based on the same facts as co-extensive and redundant. Accordingly it argues that because (it contends) the UCL claim fails, so must the FAL and CLRA claims. For the reasons discussed above, the UCL claim is valid, as are the FAL and CLRA claims. To borrow from NovaStar's own Motion, "if the defendant has violated one, it has violated all." Motion at 13. Because NovaStar makes no other argument for why the FAL claim should be dismissed, the validity of plaintiffs' UCL claim as demonstrated above dictates that the FAL claim also must be sustained.

### c.     The CLRA Applies to NovaStar's Violation of RESPA's Disclosure Requirements.

Finally, and contradicting its own argument that "if the defendant has violated one, it has violated all," NovaStar argues that even if the UCL and FAL claims are sustained, the Court should dismiss plaintiffs' claim under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, because NovaStar contends that the transaction at issue involved a mere extension of credit and not the sale of goods or services. This Court should conclude that the premiums at issue are payments for "goods or services," just as NovaStar has described them in other litigation against it.[3] Indeed, if the premiums at issue were not for "goods or services," then *NovaStar* would violate RESPA's prohibition against unearned referral fees under 12 U.S.C. § 2607(a). *See* RESPA Statement of Policy 1999-1, 64 Fed. Reg. 10080, 10084 (March 1, 1999) ("In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or

---

[3] NovaStar made this argument in opposition to a motion for class certification in the case of *Tandiama v. NovaStar Mortgage Inc*, C03-0909 (W.D. Wash.). An excerpt from NovaStar's memorandum is attached as Exhibit B to the Declaration of Ari Brown. *See* page 4, lines 1-21, of the attached excerpt.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (C07-3438 VRW)

services were actually performed for the compensation paid."); *see also Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1208 (9th Cir. 2003).

Relying on *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. App. 2007), *McKell v. Washington Mutual Inc., supra*, and *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353 (N.D. Cal. 2007), NovaStar nonetheless says that the premiums at issue are "extensions of credit" exempt under the CLRA. *Van Slyke*, however, involved fees in the issuance of credit cards that were not alleged to be for services performed. Similarly, in *McKell*, in contrast to NovaStar's own position that its premium payments are payments in return for services (*see* Motion at 2; Declaration of Ari Brown, Exh. B at 4), plaintiffs "cite[d] no authority or ma[d]e no argument demonstrating that [defendant's] . . . actions were undertaken in a transaction intended to result ... in the sale of goods or services." *McKell*, 142 Cal. App. 4th at 1488. Likewise, in *Berry* the only "good" alleged to be provided was the credit itself, and plaintiff did not contend that any services were performed. *Berry*, 147 Cal. App. 4th at 228-29.

Thus, the cases that NovaStar cites are readily distinguishable because they involved no allegation by plaintiff – much less, as here, a prior assertion by the defendant itself – that services were performed in connection with the fees. More importantly, however, two of the three cases relied on by NovaStar – *McKell* and *Berry* – were recently criticized by another court in this district for their "superficial" analysis, and the criticizing court rejected their holdings on this very point. As the court observed in *Hernandez v. Hilltop Financial Mortgage Inc.*, 2007 WL 3101250 (N.D. Cal. Oct. 22, 2007):

> The Court finds neither *Berry* nor *McKell* persuasive, and concludes the California Supreme Court would find that the CLRA does apply to the mortgage loans in the present case. In so holding, the Court agrees with the reasoning of several other district courts that have addressed this issue. *See* . . . *Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) (finding that, in the context of predatory lending allegations and after a review of the case law, 'California courts generally find financial transactions to be subject to the CLRA.'); *In re Ameriquest Mortgage Co.*, No. 05-CV-7097, 2007 WL 1202544, at *6 (N.D. Ill. Apr. 23, 2007) (stating, in dicta, that 'it is not inconceivable that . . . plaintiffs could prove the existence of tangential 'services' associated with their mortgages and establish that these transactions were covered by the CLRA')."

*Hernandez*, 2007 WL 3101250, *6 (some citations omitted); *see also* Cal. Civ. Code § 1760 (CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection").

Plaintiffs, in short, have properly and sufficiently plead claims under the UCL, the FAL and the CLRA based on NovaStar's concealment of its premium payments to brokers, which increased the interest rate of plaintiffs' loan and the loans of class members that they seek to represent.

### III.    CONCLUSION

For all of the foregoing reasons, this Court should deny NovaStar's motion to dismiss.

DATED:  November 15, 2007

By:

LAW OFFICES OF CARTER M. ZINN

Carter M. Zinn

*Hernandez*, 2007 WL 3101250, *6 (some citations omitted); *see also* Cal. Civ. Code § 1760 (CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection").

Plaintiffs, in short, have properly and sufficiently plead claims under the UCL, the FAL and the CLRA based on NovaStar's concealment of its premium payments to brokers, which increased the interest rate of plaintiffs' loan and the loans of class members that they seek to represent.

### III.    CONCLUSION

For all of the foregoing reasons, this Court should deny NovaStar's motion to dismiss.

DATED:  November 15, 2007

By:

LAW OFFICES OF CARTER M. ZINN

Carter M. Zinn

PHILLIPS LAW GROUP, PLLC

By:/s/ _____
    John W. Phillips
    Matthew Geyman

LAW OFFICE OF ARI BROWN

By: /s/ _____
    Ari Y. Brown

Attorneys for Plaintiffs

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that on November 15, 2007, I caused the foregoing document to be

4    electronically filed with the Clerk of the Court using the CM/ECF system and caused it to be

electronically served on all counsel as follows:

5

6    William F. Alderman
Justin M. Aragon
Orrick, Herrington & Sutcliffe LLP

7    The Orrick Building
405 Howard Street

8    San Francisco, CA  94105-2669
walderman@orrick.com

9    jaragon@orrick.com

10

11                                              By:  /s/ John W. Phillips

12

13

14

15

16

17

18

19

20

21

22

23