**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHRISTOPHE KUBIAK and SEBASTIAN SANGES, on behalf of themselves and all others similarly situated,**<br><br>            **Plaintiffs,**<br><br>              **v**<br><br>**NOVASTAR MORTGAGE, INC; NOVASTAR HOME MORTGAGE, INC and NOVASTAR FINANCIAL, INC,**<br><br>            **Defendants.** | **No   C 07-3438 VRW**<br><br>**ORDER** |

**This case concerns mortgage loans and disclosures made to borrowers in the course of those loans.  Plaintiffs have filed a class action complaint alleging that defendants had a duty to disclose under the Real Estate Settlement Procedures Act, 12 USC § 2601 ("RESPA"), a broker fee paid from NovaStar Mortgage, Inc ("NMI") to NovaStar Home Mortgage, Inc ("NHMI").  Plaintiffs claim that defendants' RESPA violation creates liability automatically under California's Consumers Legal Remedies Act ("CLRA"), Cal Civ**

1 Code §§ 1770, 1780-82; Unfair Competition Law ("UCL"), Cal Bus &
2 Prof Code § 17200; and False Advertising Law ("FAL"), Cal Bus &
3 Prof Code § 17500.  Relying heavily on the Supreme Court's decision
4 in <u>Bell Atlantic Corp v Twombly</u>, 549 US __, 127 S Ct 1955, 1968
5 (2007), defendants seek to have the court dismiss with prejudice
6 the complaint because, according to defendants, "the speculative
7 foundation of plaintiff's claim is indisputably false," Def Mot
8 Dismiss, Doc #18 at 1.  Although the court agrees that the
9 complaint is flawed, its shortcomings are much less sweeping than
10 defendants assert.  Accordingly, defendants' motion is GRANTED with
11 leave to amend.

I

14      The complaint, whose allegations are regarded as true at
15 this point in the litigation, alleges that the process of securing
16 a loan includes often a lender, a borrower and a broker who acts as
17 an intermediary.  The borrower pays the broker an origination fee
18 for the broker's services, and the fee is computed as a percentage
19 of the loan.  Doc #1 at ¶1.  The broker may also seek compensation
20 from the lender.  This payment is called a "yield spread premium,"
21 "YSP" or "premium."  Doc #1 at ¶2.  Importantly, this premium has
22 the effect of increasing the interest rate on the borrower's loan.
23 Doc #1 at ¶2.  Because the premium affects the borrower's interest
24 rate, a borrower who accepts a loan with this yield spread premium
25 ends up being charged a higher interest rate than would apply in
26 the absence of the premium.  Doc #1 at ¶2.  Because the broker and
27 lender fail to disclose the premium payment "until the borrower

signs final closing documents, if at all," the borrower is deprived of the opportunity to negotiate "better loan terms." Doc #1 at ¶2.

NMI is a mortgage lender. NMI receives loan referrals from mortgage brokers and pays those brokers a premium for referring the loan. Doc #1 at ¶3. The higher the interest rate, the higher the premium that NMI pays to the broker. Doc #1 at ¶3. One broker that NMI deals with is NMI's affiliate, NHMI. Doc #1 at ¶3. The third defendant, NovaStar Financial, Inc ("NFI"), owns more than ten percent of NMI and NHMI. Doc #1 at ¶4.

Plaintiffs allege that defendants use a correspondent lender arrangement in order to avoid disclosing the broker premiums that raise the interest rate that borrowers pay. Doc #1 at ¶15. Plaintiffs allege that this arrangement contains three steps. First, NMI advertises to brokers that brokers can avoid disclosing the premium by serving as correspondent lenders and having NMI take actual responsibility for the loan. Second, NMI sets up its affiliate NHMI to serve as a correspondent lender by arranging for a separate NMI entity - NovaStar Capital - to provide the funds for the loan. Third, NMI pays to NHMI – but does not disclose to the borrower - a broker premium.

Plaintiffs allege that they completed a loan application with an NHMI mortgage broker in April 2005. Doc #1 at ¶18. Several days later, and as required by federal law, NHMI provided plaintiffs with a good faith estimate of the broker fees expected to be charged on the loan. Doc #1 at ¶19. The good faith estimate listed NHMI's origination fee as $5415, or 1.5% of the loan. Doc #1 at ¶19. As to an expected yield spread premium, plaintiff alleges that the good faith estimate was silent: "The Good Faith

3

Estimate did not disclose that NMI would pay a premium to NHMI or the amount of any such payment. Instead, [the estimate] stated 'yield spread premium 0-3%.' This line listed no charge – the dollar amount was left blank." Doc #1 at ¶¶19, 20. Plaintiffs allege that one month later, at closing, the loan documents plaintiffs signed did not list a premium payment. Doc #1 at ¶24. Plaintiffs allege that "NMI provided all underwriting, processing and administrative services regarding Plaintiff's loan" and that "NMI paid NHMI a premium on plaintiff's loan that caused the interest rate on Plaintiffs' loan to be increased from what otherwise would be available to them." Doc #1 at ¶¶25-26. Lastly, plaintiffs allege that they were harmed because they agreed to "an inflated interest payment as a consequence of [NMI]'s premium payment to the broker and [lost] the opportunity to get a better deal." Doc #1 at ¶4.

Defendants respond that NHMI had no duty to disclose any broker premium because NHMI was a lender, not a broker, in plaintiffs' transaction. Defendants argue that no broker premium was ever paid from NMI to NHMI. Lastly, defendants argue that even if NHMI had a duty to disclose a broker premium, the good faith estimate presented to plaintiffs at the outset disclosed that the "yield spread premium" would be between 0 and 3%.

## II

Plaintiffs do not raise a claim for damages under RESPA (see 12 USC 2607(d)(2)), but instead assert a violation of RESPA as triggering liability under California law. The California Financial Code makes a violation of RESPA a violation of California

4

law. Cal Fin Code § 50505. Plaintiffs then rely on the violation of the California Financial Code to assert a violation of California's Unfair Competition Law (see Cal Bus & Prof Code § 17200), which creates liability for any business act or practice that violates California law. Plaintiffs also allege that defendants' actions violate § 17200 independent of any RESPA violation because defendants have engaged in "unfair business practices" and "unfair, deceptive, untrue or misleading advertising." Cal Bus & Prof Code § 17200. Defendants concede (see Doc #18 at 13) that if plaintiff's complaint states a claim under § 17200, the complaint also states a claim under California's False Advertising Law (Cal Bus & Prof Code § 17500) and California's Consumer Legal Remedies Act (Cal Civ Code §§ 1770, 1780-82).

A

In support of dismissal, defendants argue first that the complaint must be dismissed as to NHMI and NMI because plaintiffs have not alleged facts sufficient to show that defendants had a duty to disclose any broker premium. In essence, defendants argue that NHMI was the lender in all respects and that plaintiffs do not allege facts sufficient to show that defendants had a correspondent lender relationship.

To begin, defendants' argument that NHMI was the lender because the loan documents identify "NHMI" as the "lender" is not well-taken. Under RESPA and its implementing regulations, the test whether a correspondent lender relationship exists is functional, not formal. 24 CFR § 3500.5(b)(7). The analysis turns on which party is responsible for the loan in effect. Pierce v Novastar

5

Mortg Inc, 489 F Supp 2d 1206, 1213-1214 (W D Wash 2007). With that distinction in mind, the court considers defendants' motion and plaintiffs' allegations in detail.

1

When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. Barron v Reich, 13 F3d 1370, 1374 (9th Cir 1994). The court is not required, however, to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994). Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R Civ P 8(a)(2). The Supreme Court recently updated this standard, rejecting the idea that "a wholly conclusory statement of claim [may] survive a motion to dismiss whenever the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Bell Atlantic Corp v Twombly, 127 S Ct 1955, 1968 (2007). The Court held that Rule 8(a) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S Ct at 1974. Defendants argue that Twombly represents a "watershed tightening of federal pleading standards" that dooms plaintiff's complaint. Doc #25 at 2.

The Court's broad statements in Twombly are more instructive once they are placed in context. Twombly was a parallel conduct case in which plaintiffs alleged an illegal agreement in restraint of trade under § 1 of the Sherman Act. Plaintiffs alleged the existence, but no facts, of an agreement. Without solid facts suggesting an agreement, plaintiffs could allege only that defendants – the former "Baby Bells" – had a "compelling common motivatio[n]" to enter a conspiracy and that they each failed "to pursue attractive business opportunities" in one another's markets. Twombly, 127 S Ct at 1962. The Supreme Court found those bare allegations insufficient because they did not provide "enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 127 S Ct at 1965. An agreement or concert of action was crucial to plaintiffs' claim in Twombly, as mere parallel conduct is not unlawful under section 1. See Theatre Enterprises, Inc v Paramount Film Distributing Corp, 346 US 537, 540-41 (1954).

The import of Twombly is hotly contested. See, for example, Iqbal v Hasty, 490 F3d 143, 157-58 (2d Cir 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."). The parties dispute whether the opinion announces a bold, broadly applicable standard or a specific holding in a narrow, distinguishable antitrust context. And the Supreme

7

Court issued a short, per curiam opinion two weeks after Twombly that may or may not have applied the new "plausibility" standard. See Erickson v Pardus, 127 S Ct 2197, 2200 (2007) ("Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."'), quoting Twombly quoting Conley v Gibson, 355 US 41, 47 (1957); see also Erickson, 127 S Ct at 2200 (stating that "Justice Scalia would deny the petition for a writ of certiorari.").

Although courts have struggled with whether Twombly is a broad or narrow holding, the court need not enter that judicial thicket in this case. Even applying the stricter Twombly standard, plaintiff's allegations are sufficient to survive a Rule 12(b)(6) motion.

Central to Twombly's reasoning was plaintiff's attempt to allege an agreement. An agreement is the heart of a § 1 claim, but plaintiff did not provide enough facts to permit the district court to infer that an agreement existed:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable * * *.

Twombly, 127 S Ct at 1965 (footnote omitted); Twombly, 127 S Ct at 1968-69 ("[T]he complaint does not set forth a single fact in a context that suggests an agreement."); Twombly, 127 S Ct at 1966 (discussing "[t]he need at the pleading stage for allegations

8

plausibly suggesting (not merely consistent with) agreement"). The Court analogized an agreement to a conspiracy, stating that both are collections of other, more specific facts that provide a basis for inferring a tacit agreement. Thus, in the context of a parallel conduct claim, plaintiffs might have been more successful had they, as the district court stated, "allege[d] additional facts that 'ten[d] to exclude independent self-interested conduct as an explanation for defendants' parallel behavior.'" Twombly, 127 S Ct at 1963. Twombly asks courts to analyze a complaint using inductive reasoning, scanning the allegations for facts that, taken together, plausibly suggest an agreement.

2

Here, plaintiffs allege an agreement, and they allege specific facts that permit a plausible inference that the agreement existed. Plaintiffs allege that defendants had an "arrange[ment]" in which NHMI served as a correspondent lender rather than a broker in order to avoid disclosing the premium. Doc #1 at ¶15. That arrangement is in the nature of an agreement. That arrangement is vital to plaintiff's RESPA claim because if no such correspondent lender arrangement exists, then NHMI would not have a duty to disclose the premium. Plaintiffs allege two specific facts that, if proven, support a "reasonable expectation that discovery will reveal evidence of" that agreement. Twombly, 127 S Ct at 1965. First, plaintiffs allege that "NMI provided all underwriting, processing and administrative services regarding Plaintiffs' loan." Doc #1 at ¶25. Second, plaintiffs allege that "NMI paid NHMI a premium on plaintiffs' loan that caused the interest rate on

1 Plaintiffs' loan to be increased from what otherwise would be
2 available to them."  Doc #1 at ¶26.  Plaintiffs thus allege that
3 NMI paid NHMI for the privilege of shouldering much of the risk and
4 work surrounding the loan.

5       Assuming those facts are true, as <u>Twombly</u> requires, a
6 plausible inference to draw is that NMI expected in fact to receive
7 the benefit of the loan and that NHMI was in fact a correspondent
8 lender.  That inference is plausible because the alleged facts are
9 "further circumstance[s] pointing toward a meeting of the minds"
10 between NMI and NHMI regarding who will receive which monies.
11 <u>Twombly</u>, 127 S Ct at 1966.  The alleged facts, if proven, are not
12 "neutral" whether NMI and NHMI had a correspondent lender
13 arrangement; instead, they are "factually suggestive" that the
14 parties had such an arrangement.  <u>Twombly</u>, 127 S Ct at 1966 & n5.
15 If the allegations are true (as the court must now assume), they
16 tend to negate defendants' contention that NHMI was a lender and
17 not a broker.  The allegations "plausibly suggest" and are "not
18 merely consistent with" plaintiffs' theorized secret relationship
19 between NMI and NHMI.  <u>Twombly</u>, 127 S Ct at 1966.  Accordingly, the
20 complaint states a claim upon which relief may be granted.

21       The court's conclusion that this case may proceed to
22 discovery is supported by the policy considerations discussed in
23 <u>Twombly</u>.  The Court expressed a concern that modern discovery
24 practice has become very expensive and that meritless claims should
25 be dismissed, if possible, "to avoid the potentially enormous
26 expense of discovery."  <u>Twombly</u>, 127 S Ct at 1967.  Here, by
27 contrast, there is no indication that discovery will be expensive.
28 In fact, plaintiffs claim they have already identified the specific

**United States District Court**
For the Northern District of California

10

1 documents they need to prove their case and that defendants refuse
2 to provide.  Doc #23 at 2 n1.  In addition, evidence relevant to
3 this case may have already been produced in the Washington
4 litigation, and therefore plaintiffs may have a sense of what
5 information is available and what is not.  On the other hand, and
6 as Twombly noted, the court is at an inherent disadvantage when
7 trying to estimate the likely costs of discovery.  See Twombly, 127
8 S Ct at 1967 & n6, citing Frank Easterbrook, Discovery as Abuse, 69
9 BU L Rev 635, 638-39 (1989).  Still, this case is not a massive
10 antitrust or securities action, and there is no indication that
11 discovery will be suffocating.  That factor, although not a ground
12 to deny a motion to dismiss, buttresses the court's conclusion that
13 the gap between the facts alleged in the complaint and the facts
14 necessary to prove plaintiff's case is not a chasm.

B

17    Second, defendants move to dismiss on the grounds that
18 even if defendants had a duty to disclose the premium, defendants'
19 disclosure that a premium of "0-3%" would be charged is sufficient
20 as a matter of law.
21    First, defendants' argument is unconvincing because even
22 if a disclosed range of "0-3%" is sufficient, that disclosure was
23 not made at closing in May 2005.  The disclosure was made in only
24 the good faith estimate delivered in April 2005.  But as defendants
25 concede, RESPA and its implementing regulations require disclosure
26 at settlement as well.  Doc #18 at 2-3; 24 CFR 3500; 24 CFR
27 3508(b); see also Cal Fin Code § 50204(c).  Disclosures at closing
28 are made by the "settlement agent" who acts on behalf of the

11

lender, who plaintiffs allege was NMI.  Accordingly, even if defendants' disclosure in the good faith estimate was valid, the failure to disclose in the settlement documents that NHMI would be paid a broker fee is a violation of RESPA.

Second, defendants stretch too far in arguing that a disclosed range of "0-3%" is a sufficient disclosure per se.  RESPA requires lenders to disclose in the good faith estimate the "amount or range of charges for specific settlement services the borrower is likely to incur."  See 12 USC § 2604(c); 24 CFR § 3500.7(c) ("A good faith estimate consists of an estimate, as a dollar amount or range, of each charge * * *.").  Federal law permits defendants to utilize a range, but the range must be offered in "good faith."

Whether a range of "0-3%" is a sufficient disclosure is a question of fact.  <u>Pierce v NovaStar Mortg, Inc</u>, No C05-5835 RJB, 2007 WL 836714, at *5-7 (W D Wash Mar 15, 2007).  RESPA regulations stated that the range must reflect that amount "[t]hat the borrower will <u>normally</u> pay or incur * * * based upon <u>common practice in the locality of the mortgaged property</u>."  24 CFR § 3500.7(c)(2) (emphases added).  In addition, an estimated range of premium payments must "bear a <u>reasonable relationship</u> to the charge a borrower is likely to be required to pay at settlement, and <u>must</u> be based upon <u>experience in the locality of the mortgaged property</u>."  24 CFR § 3500.7(c)(2) (emphases added). RESPA regulations <u>require</u> a fact-specific inquiry into the common premium amounts paid in Oakland, California, where plaintiffs obtained their loan.  The court cannot address that issue on a motion to dismiss.  In addition, whether a lender acts in good faith is a question of fact, and the court cannot consider the lender's internal mental

12

state on a motion to dismiss. If the lender never had an intention of charging a zero percent premium and only included "0" in the range of "0-3%," then the disclosure might be in bad faith and would be inadequate under RESPA.

Any per se rule stating that no RESPA violation occurs as long as the disclosed range is accurate technically, as defendants urge here, makes little sense. If a good faith estimate discloses a range of, for instance, "0-75%," the court would be hard-pressed to find that disclosure reasonable per se. The reasonableness of a disclosed range is a question of fact, to be determined by common lending practices in a specific real estate market and by the lender's intent. See Pierce, 2007 WL 836714 at *7. The court declines to rule – in the abstract, at this stage in the litigation – that a range of 0-3% is reasonable per se.

C

Third, defendants move to dismiss NFI on the grounds that plaintiff has alleged no facts suggesting NFI's involvement in the alleged RESPA violations.

NFI is a ten percent shareholder in NMI and NHMI. Doc #1 at ¶9. That allegation is the only fact that comes close to describing NFI's involvement in the case. The only other mention in the complaint of NFI is the conclusory allegation that NFI "violated" the California Financial Code. Doc #1 at ¶¶42, 43; see Cal Fin Code §§ 50503, 50505, 50204. That allegation does not provide facts sufficient to support a plausible inference that plaintiffs' are entitled to relief from NFI.

13

Plaintiffs' only real allegation against NFI is that NFI violated § 50503. That section provides, in relevant part:

> (a) It is a violation for any * * * shareholder controlling an ownership interest of 10 percent or more * * * to do any of the following:
>
> (2) Knowingly or recklessly make or cause to be made any misstatement or omission of a material fact, pertaining to a loan or loan servicing.
>
> * * *.

Cal Fin Code § 50503. There is little basis for believing that NFI – the corporate parent of NMI and NHMI – is involved actively in any alleged misrepresentations concerning broker premiums between NMI and NHMI. There is even less basis for believing that NFI is involved actively in any single loan transaction, much less plaintiffs'. The court might hypothesize that NFI plays some role in arranging for a separate NMI subsidiary – NovaStar Capital – to provide the funding for NHMI's correspondent loans, but that conclusion would be the sheerest speculation. <u>Twombly</u> prohibits that approach. In short, plaintiff alleges no facts to permit any inference, much less a plausible inference, that NFI is involved in any misrepresentations to borrowers or any loan activities at all (see §§ 50503, 50204), or any RESPA violations (see § 50505).

Accordingly, the claims against NFI are dismissed with leave to replead should plaintiffs uncover additional facts that suggest NFI played a role in the violations alleged here.

III

Aside from the factual allegations in the complaint, however, plaintiffs concede that they have pled damages improperly.

14

See Doc #23 at 14 n2. In the prayer for relief, plaintiffs request:

1. Actual damages;
2. Injunctive relief as allowed by law;
3. Restitution as allowed by law;
4. Statutory damages as provided by Cal Bus & Prof Code § 17500 et seq;
5. Exemplary and punitive damages as provided by Cal Bus & Prof Code § 17200 et seq and Cal Civ Code § 1780 et seq.

See Doc #1. In addition, plaintiffs allege that because defendants have violated § 17200, defendants are liable "for damages in amounts to be proven at trial, including attorneys' fees, costs, and exemplary damages provided by law." Doc #1 at ¶53.

Plaintiffs have mixed together the remedies permitted by California law. Request #4 is improper because § 17500 does not allow an award of damages. See Cal Bus & Prof Code § 17535; Chern v Bank of Am, 15 Cal 3d 866, 875 (1976). Request #5 and paragraph 53 are improper because § 17200 allows equitable relief only and not punitive or actual damages. See Cal Bus & Prof Code § 17203; Industrial Indem Co v Santa Cruz County Sup Ct, 209 Cal App 3d 1093, 1096 (Cal App 1989). Request #3 is permissible, however, because § 17203 permits restitution. See Dean Witter Reynolds, Inc v Sup Ct, 211 Cal App 3d 758, 773 (Cal App 1993). Lastly, request #5 as pertains to § 1780 is partially correct because § 1780 permits an award of actual damages, injunctive relief, restitution and punitive damages. See Cal Civ Code § 1780(a)(1)-(4).

Because of the foregoing errors in plaintiffs' allegations and prayer for relief, the complaint is dismissed.

//
//
//

IV

Defendants' motion is GRANTED. Plaintiffs are afforded leave to serve and file an amended complaint not later than January 18, 2008.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge