The Honorable Vaughn R. Walker

Carter M. Zinn (State Bar No. 205034)
LAW OFFICES OF CARTER M. ZINN
3450 Broderick Street, Suite 302
San Francisco, CA 94123
Telephone: (415) 292-4100
Facsimile: (415) 292-4106
E-mail: carter@zinn-law.com

John Phillips (Washington State Bar No. 12185)
Matthew Geyman (Washington State Bar No. 17544)
Phillips Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Phone: (206) 382-6163
Facsimile: (206) 382-6168
E-mail: jphillips@jphillipslaw.com
E-mail: mgeyman@jphillipslaw.com

Ari Brown (Washington State Bar No. 29570)
LAW OFFICE OF ARI BROWN
2003 Western Avenue, Suite 203
Seattle, WA 98121
Telephone: (206) 625-7999
Facsimile: (206) 441-6014
E-mail: ari@abrownlegal.com

Attorneys for Plaintiffs CHRISTOPHE KUBIAK and SEBASTIAN SANGES

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHE KUBIAK, an individual; and SEBASTIAN SANGES, an individual, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NOVASTAR MORTGAGE, INC., a Virginia corporation; and NOVASTAR HOME MORTGAGE, INC., a Delaware corporation,<br><br>                    Defendants. | No. C07-3438 VRW<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1

## I.     INTRODUCTION

2      Plaintiffs bring this action, on behalf of themselves and a class of persons similarly

3   situated, against Defendants for damages and for injunctive relief resulting from the Defendants'

4   unlawful conduct concerning residential mortgage loan transactions with Plaintiffs and the class

5   members.

6      1.     Individuals who decide to buy a home or refinance a home loan often obtain the

7   assistance of a mortgage broker to obtain financing. In order to compensate the broker for

8   services rendered in arranging a mortgage loan, the borrower agrees to pay a fee to the broker.

9   This fee is commonly referred to as an "origination fee" or "broker fee." The fee is computed as

10  a percentage of the loan amount.

11

12     2.     The broker proceeds to secure a loan commitment from a lender with specific

13  terms, including interest rate, that the lender will extend a loan to the particular borrower. As

14  part of that deal, the broker often secures from the lender a commitment from the lender to pay

15  an additional fee directly to the broker that increases the interest rate on the borrower's loan.

16  The borrower unwittingly accepts a loan at an interest rate higher than what the lender would

17  have otherwise charged for the loan in the absence of the lender's payment to the broker. This

18  payment from the lender to the broker is commonly referred to as a "yield spread premium,"

19  "YSP," "rebate," "negative points," "back-end payment," as well as other names (and will be

20  referred to herein as a "premium" or "premium payment"). The broker and the lender often do

21  not disclose adequately to the borrower the lender's premium payment to the broker until the

22  borrower signs final closing documents, if at all, thus depriving the borrower of a meaningful

23  opportunity to negotiate better loan terms.

24     3.     Defendant NovaStar Mortgage, Inc. ("NMI" or "NovaStar") obtains a substantial

25  percentage of its business from the referrals of mortgage brokers who are either independent

26  agents or who work under the name of NovaStar's affiliated company, defendant NovaStar

Home Mortgage, Inc. ("NHMI"). Borrowers pay the broker a fee for procuring the loan with

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1  NMI. NMI then pays the broker a premium for referring the loan at an inflated interest rate –

2  and the more inflated the rate, the greater the premium NMI pays to the broker.

3      4.      NMI's failure to adequately disclose to California borrowers its premium payment

4  until the borrower signs final loan documents (hereinafter "closing"), if at all, takes the borrower

5  off the market and deprives him of the opportunity to secure a lower interest rate loan.  The

6  damage to Plaintiffs and NovaStar's other similarly-situated California borrowers is direct and

7  substantial; the borrower pays an inflated interest payment as a consequence of NovaStar's

8  premium payment to the broker and loses the opportunity to get a better deal.  As to all such

9  NovaStar loans, NovaStar's failure to adequately disclose its premium payment to the broker

10  constitutes a deceptive act and an unfair method of competition prohibited by California

11  Business and Professions Code § 17200.  The omission in Good Faith Estimates, and in some

12  cases, HUD-1 Settlement Statements, of the fact and amount of the premium is willfully

13  misleading and in violation of the California Business and Professions Code § 17500.  This

14  deceptive conduct, in many cases, also violates the federal Real Estate Settlement Procedures

15  Act, 12 U.S.C. § 2601 et seq. ("RESPA") as incorporated by the California Residential Mortgage

16  Lending Act ("CRMLA").

17              **II.    JURISDICTION AND VENUE**

18      5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) in that the

19  matter is a class action wherein the amount in controversy exceeds the sum or value of

20  $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State

21  different from the Defendants.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2),

22  in that a substantial part of the events giving rise to the claim occurred in this judicial district.

23              **III.    PARTIES**

24      6.      Plaintiffs Christophe Kubiak and Sebastian Sanges are individuals who reside

25  together in Oakland, California.  Plaintiffs obtained a mortgage loan from NovaStar.

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1       7.      Defendant NovaStar Mortgage, Inc. ("NMI" or "NovaStar") is a Virginia

2   corporation headquartered in Kansas City, Missouri. NMI is a wholly owned subsidiary of

3   NovaStar Financial, Inc. NMI is licensed in California as a consumer loan company. At all

4   times pertinent to this action, NMI conducted business throughout the State of California.

5       8.      Defendant NovaStar Home Mortgage Inc. ("NHMI") is incorporated under the

6   laws of the state of Delaware. NHMI is a wholly-owned subsidiary of NovaStar Financial, Inc.

7   and an affiliate of defendant NMI. NHMI is licensed in California as a consumer loan company.

8   At times pertinent to this action, NHMI conducted business throughout the State of California.

9               **IV.    FACTS COMMON TO THE CLASS**

10       9.      NovaStar engages in residential mortgage lending within the State of California.

11   NovaStar operates a program pursuant to which mortgage brokers refer prospective borrowers to

12   NovaStar.

13       10.     The payments at issue in this case are NMI's premium payments to mortgage

14   brokers. NMI regularly makes rate sheets available to brokers in print and through its Internet

15   website. The rate sheets and corresponding internet pricing programs list the terms of the loans

16   NMI is offering on a particular date. Interest rates are set with reference to a particular rate sheet

17   for use between the broker and NMI. When a broker submits a loan to NMI on behalf of a

18   borrower, NMI quotes an interest rate in writing that presumes a specific premium payment to

19   the broker. The premium directly correlates with a higher interest rate to the borrower, *i.e.*, if

20   NovaStar does not pay the premium, the rate sheet provides for a lower interest rate loan.

21       11.     Over the life of a loan, borrowers may pay thousands of dollars more in higher

22   interest payments than they would have if NovaStar had not paid the broker a premium.

23       12.     The premium must be disclosed and adequately explained to the borrower early in

24   the transaction for the borrower to be able to fairly evaluate the loan he is being offered. For

25   loans subject to RESPA's disclosure requirements, a lender must provide a written Good Faith

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1    Estimate that discloses to the borrower any such premium, no later than the earlier of (1) the

2    extension of credit, or (2) three (3) days after the lender receives the borrower's application for

3    mortgage. 12 U.S.C. § 2604(c), 24 C.F.R. § 3500.7. The failure to disclose in good faith a

4    premium prior to closing violates these rules. These disclosure requirements are specifically

5    incorporated into California law by California Financial Code § 50505. In addition, RESPA

6    requires the lender to disclose its premium payment to the broker in the HUD-1 Settlement

7    Statement provided the borrower at closing. 24 C.F.R. § 3500.7. Both disclosures are required

8    to comply with the law.

9         13.    As the United States Department of Housing and Urban Development ("HUD"),

10   the agency charged with regulatory oversight of RESPA, has stated with regard to the reasoning

11   behind the disclosure requirements:

12             In HUD's view, meaningful disclosure includes many types of
          information: what services a mortgage broker will perform, the
13             amount of the broker's total compensation for performing those
          services (including any yield spread premium paid by the lender),
14             and whether or not the broker has an agency or fiduciary
          relationship with the borrower. … HUD believes that disclosure of
15             this information, and written acknowledgement by the borrower that
          he or she has received the information, should be provided early in
16             the transaction. Such disclosure facilitates comparison shopping by
          the borrower, to choose the best combination of up front costs and
17             mortgage terms from his or her individual standpoint.

18   Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53056.

19        14.    The three chief strategies that NovaStar employs to avoid disclosing to borrowers

20   its premium payments to brokers in a meaningful manner include the following: First, NovaStar

21   has implemented a policy of only disclosing its premium payment either not at all or in a vague

22   manner that does not inform the borrower about NovaStar's premium payment to the broker.

23   The named plaintiffs received no advance written notice that NMI was going to pay their broker

24   a premium that would increase their interest rate. Second, NMI arranges to have its affiliate

25   NHMI serve as a correspondent lender to hide from the borrower its premium payment to NHMI

26   and thus its effect on the borrower's interest rate. And third, NMI advertises to brokers that they

1    can avoid disclosing NMI's premium payment to borrowers by serving as correspondent lenders

2    who fund the loan using NovaStar's warehouse line of credit, supplied by another NovaStar

3    affiliate, NovaStar Capital, Inc., and as to which NMI is financially responsible from the outset.

4        15.    NMI's failure to disclose its premium payments has harmed the Plaintiffs and the

5    members of the Class because that non-disclosure deprived them of material information that

6    they could have used to bargain for better loan terms and a lower interest rate from NovaStar if

7    no such undisclosed payment had been made. The result is that the Plaintiffs and the Class have

8    paid, and will continue to pay, more interest than they would have if NMI had not paid the

9    undisclosed premium payment.

10                    **V.    PLAINTIFFS' TRANSACTION**

11        16.    In approximately March, 2005, Christophe Kubiak and Sebastian Sanges

12    ("Plaintiffs") sought to refinance the home mortgage on their residence located in Oakland,

13    California.

14        17.    Plaintiffs contacted an NHMI mortgage broker and completed a loan application

15    in April, 2005. The broker obtained credit reports for Mr. Kubiak and Mr. Sanges.

16        18.    On information and belief, the broker submitted the loan to NMI for a funding

17    decision on or before April 15, 2005. The broker submitted information including Plaintiffs'

18    respective credit scores and other financial information. NMI quoted an interest rate for the loan

19    that specified the amount of the premium that NMI would pay to NHMI. The written good faith

20    estimate that the NHMI broker prepared is dated April 15, 2005. According to the good faith

21    estimate, the costs and fees of the loan included an origination fee of $5,415 that constituted

22    1.5% of the loan amount. The Good Faith Estimate did not disclose that NMI would pay a

23    premium to NHMI or the amount of any such payment. Instead, it stated "yield spread premium

24    0-3%." This line listed no charge – the dollar amount was left blank. The Good Faith Estimate

25    had a column designated "POC" for which charges that were to be "paid outside closing" – such

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1    as a premium payment – were to be listed.  The NHMI broker listed no amount to be paid under

2    this column.

3        19.    Plaintiffs were not informed that NMI was also going to pay their NHMI broker a

4    premium in connection with the loan, how much the premium would be, or the effect this

5    payment would have on their interest rate.

6        20.    An escrow agent came to Plaintiffs' place of business on May 20, 2005 and

7    Plaintiffs signed final closing documents.

8        21.    Plaintiffs were not provided copies of the loan documents in advance of the May

9    20, 2005, closing.

10       22.    Plaintiffs were not sent copies of the documents they signed at closing until

11   several weeks later.

12       23.    At closing, the actual settlement charges totaled $8,975.  Of this $5,415 was

13   stated as being paid by Plaintiffs to NHMI as an origination fee and an additional $1,585 was

14   listed as being paid by Plaintiffs to NHMI for fees designated as underwriting, processing, and

15   administration fees.  No premium payment was listed on the settlement statement.

16       24.    On information and belief, NMI provided all underwriting, processing and

17   administrative services regarding Plaintiffs' loan.

18       25.    On information and belief, NMI paid NHMI a premium on Plaintiffs' loan that

19   caused the interest rate on Plaintiffs' loan to be increased from what otherwise would be

20   available to them.

21   **VI.    TOLLING OF THE STATUTE OF LIMITATIONS DUE TO FRAUDULENT**
22                    **CONCEALMENT**

23       26.    At all relevant times during the Class Period, NovaStar fraudulently concealed the

24   relevant facts giving rise to the claims asserted by Plaintiffs and the Class, resulting in the

25   equitable tolling of all applicable statutes of limitations.

26       27.    In conjunction with the mortgage loans that Plaintiffs and the Class obtained from

NovaStar, NMI was required to disclose the fact and amount of all premium payments it paid to

1    the mortgage broker.  NMI was also required to disclose any affiliations with other NovaStar

2    entities involved in the loan.

3          28.      With respect to Plaintiffs' loan and many other class loans, NovaStar did not

4    disclose the fact and amount of any premium payment, thereby concealing the payment and its

5    effect from Plaintiffs and from the Class.  For all class loans, NovaStar concealed the effect its

6    premium payments on the borrowers' interest rate.

7          29.      NovaStar's wrongdoing was not discoverable prior to the date of filing this

8    Complaint since NovaStar effectively concealed its premium payment and its effect on Plaintiffs'

9    loan.  Plaintiffs exercised due diligence to discover NovaStar's wrongdoing by promptly filing

10   this Complaint after discovering the facts giving rise to these claims.

11                        **VII.    THE CLASS ALLEGATIONS**

12         30.      Plaintiffs named above bring this action on behalf of a Class of similarly situated

13   individuals, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

14         31.      The Class is comprised of every person for whom the following is true:

15               a.      The person entered (or enters) into a residential mortgage transaction or a

16   refinance mortgage, secured by residential property located in California, that was (or is)

17   funded by NMI.

18               b.      In connection with that transaction, NMI paid the mortgage broker a

19   premium.

20               c.      In connection with that transaction, the borrower paid the mortgage broker

21   a fee that is in addition to the premium NMI paid the broker.

22               d.      In connection with that transaction, neither NMI nor a broker through

23   whom it transacted listed the fact and amount of the premium in writing on a Good Faith

24   Estimate that was provided to the borrower, prior to the time the borrower signed final

25   closing documents, or failed to disclose the premium on the HUD-1 Settlement Statement

26   provided to the borrower, or both; and

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1          e.      With respect to the inadequate disclosures in Good Faith Estimates, NMI

2    received the loan application more than three days before the borrower signed final

3    closing documents such that NMI could have informed, or caused the broker to inform

4    the borrower of the amount of the premium payment in time to reasonably allow the

5    borrowers to make informed decisions regarding the loan.

6         32.     Plaintiffs seek to recover damages under California Civil Code § 1780 and seek

7    restitution and injunctive relief under California Business and Professions Code § 17200 for

8    themselves and on a class-wide basis.

9         33.     The Class members are so numerous as to make joinder impracticable.

10        34.     There are numerous issues of fact and law common to members of the Class,

11   including the following:

12         a.  Whether NovaStar's failure to adequately disclose to a borrower the existence

13   and amount of its premium payment to the broker constitutes an unfair, deceptive, or

14   otherwise unlawful or prohibited act.

15         b.  Whether NovaStar's use of NHMI or other brokers to serve as a correspondent

16   lender and avoid disclosing NMI's premium payment to the broker constitutes an unfair,

17   deceptive, or otherwise unlawful or prohibited act.

18         c.  Whether NMI's extension to brokers of a NovaStar Capital, Inc. warehouse

19   line of credit to avoid adequately disclosing the existence and amount of its premium

20   payment to the broker constitutes an unfair, deceptive, or otherwise unlawful or

21   prohibited act.

22         d.  Whether NovaStar's failure to adequately disclose to a borrower the existence

23   and amount of its premium payment to the broker is a business act within the meaning of

24   the California Business and Professions Code § 17200.

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1        e.  Whether NMI's use of NHMI to avoid disclosing its premium payment to the

2     broker is a business act within the meaning of the California Business and Professions

3     Code § 17200.

4        f.  Whether NMI's payment to brokers, including NHMI, creates an unlawful

5     inducement to the broker to violate its duties under California Financial Code § 50701.

6        g.  Whether NMI's extension to brokers of the NovaStar Capital, Inc. warehouse

7     line of credit to avoid adequately disclosing the existence and amount of its premium

8     payment to the broker is a business act within the meaning of the California Business and

9     Professions Code § 17200

10        h.  Whether NovaStar's failure to adequately disclose to a borrower the existence

11     and amount of its premium payment to the broker threatens an incipient violation of

12     consumer law or violates the policy or spirit of such law or otherwise threatens or harms

13     competition.

14        i.  Whether NMI's use of NHMI to avoid disclosing its premium payment to the

15     broker threatens an incipient violation of consumer law or violates the policy or spirit of

16     such law or otherwise threatens or harms competition.

17        j.  Whether NMI's extension to brokers of the NovaStar Capital, Inc. warehouse

18     line of credit to avoid adequately disclosing the existence and amount of its premium

19     payment to the broker threatens an incipient violation of consumer law or violates the

20     policy or spirit of such law or otherwise threatens or harms competition.

21        k.  Whether NMI's financial responsibility with respect to loans issued by NMI,

22     NHMI and NovaStar Capital, Inc. as to all class members is the same.

23        l.  Whether NovaStar's unlawful acts caused class members to incur damages.

24        m. Whether NovaStar's unfair, deceptive, or otherwise unlawful or prohibited

25     business practices have allowed NovaStar to receive and to hold ill-gotten gains

26     belonging to members of the public.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1    n.  The proper measure of damages for the members of the Class.

2    35.    The Plaintiffs' claims are typical of the claims of the members of the Class.  The

3    Representatives, like each member of the Class, did not receive notice prior to closing that a YSP

4    would be paid from NovaStar to their broker.  This information was material as a payment from

5    NMI to the broker was in exchange for an increase in the borrower's interest rate.  Plaintiffs and

6    members of the Class have been damaged by that failure to disclose.  Moreover, Plaintiffs, like

7    each member of the Class, paid an origination fee or other fee to the mortgage broker that

8    compensated the mortgage broker for his or her services.

9    36.    Plaintiffs will fairly and adequately protect the interest of all Class members in

10   the prosecution of this action and in the administration of all matters relating to claims stated

11   herein.  They are situated similarly with, and have suffered injuries similar to, the members of

12   the Class.  Plaintiffs have also retained counsel experienced in handling class action suits

13   involving consumer credit law and unfair business practices.  Neither Plaintiffs nor their counsel

14   has any interest that might cause them to fail to vigorously pursue this action.

15   37.    A class action is superior to other available methods for the fair and efficient

16   adjudication of the controversy, in that:

17         a.   The members of the Class are not aware that they have been wronged and

18         even if they were the value of their individual claims would make it difficult if not

19         impossible to prosecute individual actions.

20         b.   Concentration of the litigation concerning this matter in this Court is

21         desirable.

22         c.   The claims of the Plaintiffs are typical of the claims of the Class.

23         d.   A failure of justice will result from the absence of a class action.

24         e.   There is nothing about the Class that would render maintenance of class

25         action unusually difficult.

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

## VIII.  FIRST CAUSE OF ACTION: VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.:  UNFAIR COMPETITION

(By the Named Plaintiffs Individually and on Behalf of the Class)

38.     Plaintiffs reallege all preceding paragraphs.

39.     Beginning at an exact date unknown to Plaintiffs but at least as long as four years prior to the filing of the complaint, NovaStar has committed acts of unfair competition as defined by California Business and Professions Code § 17200, by engaging in the acts and practices alleged above.

40.     NovaStar's failure to ensure that the Plaintiffs, and the members of the Class received adequate written notice stating that NMI would pay a premium to the broker in connection with their mortgage transactions, constituted unfair and deceptive practices as defined by California Business and Professions Code § 17200.

41.     By virtue of the acts and omissions alleged above, Defendants violated the duties set forth in California Financial Code §§ 50503 and 50505.

42.     By virtue of the acts and omissions alleged above, Defendants violated prohibitions set forth in California Financial Code § 50204.

43.     NMI caused and otherwise enticed brokers, including NHMI, to violate the fiduciary duties owed to borrowers under California Financial Code § 50701.

44.     NovaStar's conduct threatens an incipient violation of consumer law or violates the policy and spirit of such law and otherwise significantly threatens or harms competition.

45.     NovaStar's conduct affects the public interest and presents a continuing threat to the public in that it has unlawfully deceived thousands of consumers by causing them to enter into loans on unfavorable terms and, upon information and belief, continues to do so.

46.     Plaintiffs and other members of the Class have no other adequate remedy of law.

47.     Plaintiffs and the members of the Class incurred monetary losses as a direct and proximate result of NovaStar's conduct.

48.    NovaStar's conduct was the proximate cause of the losses incurred by Plaintffs and the members of the Class.

49.    As a direct and proximate result of the acts alleged above, NovaStar received and continues to hold ill-gotten gains belonging to members of the public.

50.    An action for injunctive relief and restitution under the Unfair Trade Practices Act is specifically authorized under California Business and Professions Code § 17203.  NovaStar has engaged and proposes to continue engaging in unfair competition.  An order enjoining such continued unfair practices is appropriate.

51.    Accordingly, NovaStar is liable to Plaintiffs and the members of the Class for injunctive relief, and for restitution in amounts to be proven at trial.

52.    If Plaintiffs succeed in enforcing these rights affecting the public interest, then attorney's fees and costs, including attorney's fees pursuant to California Code of Civil Procedure § 1021.5, should be awarded against NovaStar because a significant benefit has been conferred on the general public or a large class of persons by enjoining NovaStar from engaging in unlawful, unfair, costs, and deceptive acts.  Further, the necessity and financial burden of enforcement are such as to make such an award appropriate.

## IX.    SECOND CAUSE OF ACTION: VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

(By the Named Plaintiffs Individually and on Behalf of the Class)

53.    Plaintiffs reallege all preceding paragraphs.

54.    All Plaintiffs herein are "Persons" and "Consumers" as defined by California Civil Code § 1761 (c) and (d).

55.    Each of the Defendants are "Persons" as defined by California Civil Code § 1761(c).

56.    All dealings between Plaintiffs and Defendants as set forth above constitute "transactions" as defined by California Civil Code § 1761(e).

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1      57.     NMI performed "services" for Plaintiffs as defined by California Civil Code

2   §1761(b).

3      58.     Defendants violated the provisions of the Consumers Legal Remedies Act, that on

4   information and belief include but were not limited to California Civil Code §§ 1770 (1) – (3),

5   (5), (9), (10), (14), (16), (18), and (19).

6      59.     Defendants' conduct threatens an incipient violation of consumer law and/or

7   violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

8      60.     Defendants' unlawful, unfair, and deceptive business practices as described

9   above, present a continuing threat to members of the public.  Plaintiffs and other members of the

10  general public have no other adequate remedy of law.

11     61.     As a direct and proximate result of the acts alleged above, Defendants received

12  and continue to hold ill-gotten gains belonging to members of the public.

13     62.     An action for injunctive relief under the Consumers Legal Remedies Act is

14  specifically authorized under California Civil Code §§ 1780 and 1782(d).

15     63.     Pursuant to California Civil Code § 1782, Plaintiffs provided written notice of

16  Plaintiffs' claims regarding violations of the Consumers Legal Remedies Act to the Defendants

17  by certified mail return receipt requested and demanded correction and rectification.  Defendants

18  have failed to provide rectification and correction in response to the written notice provided

19  following the expiration of a reasonable amount of time.

20     64.     Plaintiffs and the class have been, and continue to be damaged as a result of

21  Defendants' conduct.

22     65.     Defendants' acts were undertaken deliberately and with intent to deceive and/or

23  defraud thereby entitling Plaintiffs to punitive damages against Defendants in a sum in

24  accordance with evidence presented at trial.

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

66.    Accordingly, Defendants are liable to Plaintiffs and members of the Class for actual damages, injunctive relief, restitution and punitive damages, including costs and attorney's fees, in amounts to be proven at trial.

**X.    THIRD CAUSE OF ACTION: VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, ET SEQ.**

(By the Named Plaintiffs Individually and on Behalf of the Class)

67.    Plaintiffs reallege all preceding paragraphs.

68.    Beginning at an exact date unknown to Plaintiffs but at least as long as four years prior to the filing of the complaint, Defendants have committed acts of untrue and misleading advertising as defined by California Business & Professions Code § 17500, by failing to disclose the true compensation to be paid to borrowers' mortgage brokers and the effect of that compensation on Plaintiffs' interest rates.

69.    The fraudulent, unlawful and unfair business practices and false and misleading advertising of Defendants as described above present a continuing threat to consumers in that Defendants will continue to mislead mortgage borrowers to enter into loans without being given accurate information in the time and manner necessary.

70.    Defendants' conduct affects the public interest and presents a continuing threat to the public in that it has engaged in false and misleading advertising and caused thousands of consumers to enter into loans on unfavorable terms and, upon information and belief, continues to do so.

71.    Plaintiffs and other members of the Class have no other adequate remedy of law.

72.    Plaintiffs and the members of the Class incurred monetary losses as a direct and proximate result of Defendants' conduct.

73.    Defendants' conduct was the proximate cause of the losses incurred by Plaintffs and the members of the Class.

74.    As a direct and proximate result of the acts alleged above, Defendants received and continue to hold ill-gotten gains belonging to members of the public.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1        75.    An action for injunctive relief is specifically authorized under California Business

2    and Professions Code § 17535.  Defendants have engaged and propose to continue engaging in

3    false and misleading advertising.  An order enjoining such continued unfair practices is

4    appropriate.

5        76.    Accordingly, Defendants are liable to Plaintiffs and the members of the Class for

6    injunctive relief.

7        77.    If Plaintiffs succeed in enforcing these rights affecting the public interest, then

8    attorney's fees and costs, including attorney's fees pursuant to California Code of Civil

9    Procedure § 1021.5, should be awarded against Defendants because a significant benefit has

10   been conferred on the general public or a large class of persons by enjoining Defendants from

11   engaging in false and misleading advertising.  Further, the necessity and financial burden of

12   enforcement are such as to make such an award appropriate.

13                      **XI.    PRAYER FOR RELIEF**

14       WHEREFORE, Plaintiffs prays that judgment be awarded against Defendants and in

15   favor of Plaintiffs and the Class for the following:

16   1.    Actual damages;

17   2.    Injunctive relief as allowed by law;

18   3.    Restitution as allowed by law;

19   4.    Punitive damages to the extent allowed by law;

20   5.    Costs, including attorney's fees, as allowed by law;

21   6.    Prejudgment interest as allowed by law;

22   7.    Any other relief the Court deems appropriate.

23

24

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)

1

2  Dated: January 9, 2008.

3                              LAW OFFICES OF CARTER M. ZINN

4

5

6                              Carter M. Zinn

7

8                              PHILLIPS LAW GROUP, PLLC

9                              By:/s/_____
                                    John W. Phillips
10                                  Matthew Geyman

11                             LAW OFFICE OF ARI BROWN

12                             By: /s/_____
                                    Ari Y. Brown
13
                               Attorneys for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25

26


FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (C07-3438 VRW)